# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                            BKY No. 09-50779

Dennis E. Hecker,

             Debtor.

_____

Randall L. Seaver, Trustee,
                                       Adv. No.:  10-5027

             Plaintiff,

vs.                                                    **NOTICE OF HEARING AND MOTION**
                                                           **FOR SUMMARY JUDGMENT**

New Buffalo Auto Sales, LLC,
a Minnesota limited liability company,
f/k/a New Buffalo Chrysler, LLC,
Maurice J. Wagener and Palladium Holdings
LLC,

             Defendants.

_____

TO:    Entities specified by Local Rule 9013-3.

       1.      Plaintiff Randall L. Seaver, the Chapter 7 trustee herein ("**Trustee**"), moves the Court for summary judgment against Defendants New Buffalo Auto Sales, LLC, f/k/a New Buffalo Chrysler, LLC ("**NBAS**"), Maurice J. Wagener ("**MJW**") (collectively, "**Wagener**") and Palladium Holdings LLC ("**Palladium**") and gives notice of hearing.

       2.      The Court will hold a hearing on this motion at 2:00 p.m. on January 19, 2011, before the Honorable Robert J. Kressel, 300 South Fourth Street, Courtroom 8 West, Minneapolis, Minnesota 55415.

       3.      Any response to this Motion must be filed and served by delivery no later than January 14, 2011, which is five (5) days before the time set for the hearing (including Saturdays,

Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this Chapter 7 case was filed on June 4, 2009. The case is now pending in this Court.

5. This motion arises under Bankruptcy Rule 7056 and Fed. R. Civ. Proc. 56. This motion is filed under Bankruptcy Rule 9014 and Local Rules 9006-1 and 9013. Plaintiff seeks summary judgment against all Defendants.

6. Prior to May 7, 2009, Wagener possessed a claim against the Debtor in the approximate amount of $324,938.72. This is admitted in Wagener's Answer.

7. In January of 2009, Wagener commenced an action in Hennepin County, MN against the Debtor to assert their claim (Hennepin County Court File No. 27-CV-09-2692). This is admitted in Wagener's Answer.

8. On or about May 7, 2009, a judgment in the amount of $324,938.72 was entered and docketed against the Debtor and in favor of Wagener (the "**Wagener Judgment**" or "**Wagener Prepetition Transfer**"). This is admitted in Wagener's Answer.

9. On June 4, 2009, the Debtor commenced this bankruptcy case.

10. As of the commencement of this case, Debtor owned real estate located 1615 Northridge Drive, Medina, MN 55391 and legally described as follows:

Lot 15, Block 3, Northridge Farm, Hennepin County, Minnesota

("**Northridge**"). This is admitted in Wagener's Answer.

11.     The Wagener Judgment was obtained within 90 days prior to the commencement of this bankruptcy case.  This is admitted in Wagener's Answer.

12.     After the commencement of this case, on April 20, 2010, Wagener registered the Judgment on the certificate of title for Northridge (a Torrens property) (the "**Wagener Post-Petition Transfer**").

13.     U.S. Bank held the first mortgage on Northridge.  It obtained stay relief, foreclosed its mortgage and purchased Northridge at a sheriff's sale for $213,263.00 on or about January 19, 2010.

14.     At all times material hereto, through the Sheriff's sale, the certificate of title for Northridge evidenced that the Debtor was the owner of Northridge.  A copy of a certificate of title as of July 30, 2010 is attached hereto as Exhibit A.

15.     The second and third mortgage holders, whose original principal balances totaled approximately $900,000.00, did not redeem and, therefore, were eliminated as liens.  This is admitted by Wagener.

16.     Upon information and belief, Northridge has a value of in excess of $900,000.00.  The Hennepin County tax value for Northridge is currently $1,617,000.00.   An offer of $813,263.00 has been received to purchase Northridge.  Exhibit B.

17.     On or about July 22, 2010, Wagener, through use of the Wagener Judgment, redeemed from the U.S. Bank foreclosure by tendering less than $225,000.00 to the Hennepin County Sheriff (the "**Redemption** ").  This is admitted by Wagener.

18.     That same day, Wagener sold his interest in Northridge to Defendant Palladium, which had financed Wagener's U.S. Bank redemption. The Palladium/Wagener deal provided that Wagener would receive $80,000.00 and a $320,000.00 mortgage on Northridge from

Defendant Palladium. He received those items. Wagener's Answer admits to selling the interest.

19.     The Wagener Prepetition Transfer occurred within 90 days of the bankruptcy petition.

20.     The Wagener Prepetition Transfer occurred when the Debtor was insolvent. Further, for purposes of 11 U.S.C §547, the Debtor was deemed to have been insolvent pursuant to 11 U.S.C. §547(f).

21.     Receipt of the Wagener Prepetition Transfer allowed Wegener to receive more than he would have otherwise received in this Chapter 7 case.

22.     The Wagener Prepetition Transfer was made on account of an antecedent debt.

23.     The Wagener Prepetition Transfer was made for the benefit of Wegener, a creditor of the Debtor.

24.     But for the registration of the Judgment on the certificate of title for Northridge, Wagener could not have redeemed the U.S. Bank mortgage position.

25.     On or about April 29, 2009, Koch Group Mpls LLC obtained a judgment in the amount of $813.67 against the Debtor in the Hennepin County District Court (Court File No. 27-CV-08-25766) (the "**Koch Judgment**"). This is admitted by Defendants NBAS and Palladium.

26.     The Koch Judgment was docketed within 90 days of the commencement of this bankruptcy case (the "**Koch Prepetition Transfer**").

27.     On or about April 22, 2010, two days after the recording of the Wagener Judgment, the Koch Judgment was recorded against Northridge (the "**Palladium Post-petition Transfer**"). This is admitted by Defendants NBAS and Palladium.

28.     On or about June 11, 2010, the Koch Judgment was assigned to Defendant Palladium and said assignment was recorded against Northridge on July 8, 2010.

29.     On or about July 20, 2010, the Debtor apparently satisfied the Koch Judgment by paying the amount due to the Hennepin County District Court.

30.     On July 26, 2010, the Trustee recorded a lis pendens against Northridge.

31.     Despite having purchased the position of Defendant Wagener, Defendant Palladium recorded a notice of intention to redeem on July 8, 2010.  This is admitted by NBAS and Palladium.

32.     The Koch Prepetition Transfer occurred when the Debtor was insolvent.  Further, for purposes of 11 U.S.C. §547, the Debtor was deemed to have been insolvent pursuant to 11 U.S.C. §547(f).

33.     The Koch Prepetition Transfer allowed Defendant Palladium to receive more than it would have otherwise received in this Chapter 7 case.

34.     The Koch Prepetition Transfer was made on account of an antecedent debt.

35.     The Koch Prepetition Transfer was made for the benefit of a creditor of the Debtor.

36.     Defendant Palladium is an immediate or mediate transferee of the interest of Defendant Wagener.

37.     Defendants' discovery responses, establishing the knowledge of the Debtor's bankruptcy, are attached hereto as Exhibit C.

38.     In February, 2010, the Trustee signed and had delivered to Attorney William Skolnick a deed purporting to transfer the estate's interest in the Northridge property to Ralph Thomas ("**Trustee's Deed**").

39.     The Trustee's Deed to Ralph Thomas was never registered.

40.     On April 20, 2010, the Judgment was memorialized upon the certificate as Doc. No. 4747121.   The memorialization acted as conveyance of an interest in the Northridge property.

41.     On July 23, 2010, prior to redemption recording by any Defendant, a Notice of Bankruptcy Case was filed by the Trustee and memorialized on the certificate of title.

42.     On July 26, 2010, prior to redemption recording by any Defendant, this adversary proceeding was commenced, and a Notice of Lis Pendens was memorialized on the certificate of title.

43.     After the commencement of this case, Ralph Thomas returned the Trustee's Deed to the Trustee and executed a Quitclaim Deed in favor of the Trustee.

44.     Based upon his review of the claims register and his knowledge of the assets in this case, the Trustee believes that unsecured creditors will not be paid in full.  The Trustee does not believe that the dividend to unsecured creditors could exceed 25% and, in fact, will probably be much lower than 25%.

45.     If required, the Trustee gives notice that he may testify at the hearing of this matter.

**WHEREFORE**, the Trustee seeks summary judgment against Wagener avoiding the Wagener Prepetition Transfer and the Wagener Post-Petition Transfer and recovering Wagener's proceeds from his transaction with Defendant Palladium pursuant to 11 U.S.C. §§547, 549, 550 and 551 together with an award of Plaintiff's costs and disbursements, and for such other and further relief as the Court deems just and equitable.   Further, the Trustee seeks summary judgment against Palladium avoiding the Koch Judgment and the Palladium Post-Petition Transfer pursuant to 11 U.S.C. §§547, 549, 550 and 551 together with an award of Plaintiff's

costs and disbursements, and for such other and further relief as the Court deems just and equitable. Alternatively, the Trustee seeks a monetary judgment against each Defendant.

**LEONARD, O'BRIEN,
SPENCER, GALE & SAYRE, LTD.**

Dated: December 22, 2010

/e/ Matthew R. Burton

By_____
   Matthew R. Burton, #210018
   Attorneys for Plaintiff Randall L. Seaver
   100 South Fifth Street, Suite 2500
   Minneapolis, Minnesota  55402-1234
   (612) 332-1030

## **VERIFICATION**

I, Randall L. Seaver, Trustee, the moving party named in the foregoing Notice of Hearing and Motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

/e/  Randall L. Seaver

Dated:  December 22, 2010 _____

Randall L. Seaver

429067

# Certificate of Title

## Certificate Number:804148

Transfer From Certificate Number:   796360

Originally registered April 24, 1987 Volume:2345, Certificate No: 698945, District Court No: 19036

**State of Minnesota**
**County of Hennepin** } s.s.                    Registration

This is to certify that

Dennis E. Hecker, whose address is 1615 Northridge Drive`, Medina, Minnesota

is now the owner of an estate in fee simple

In the following described land situated in the County of Hennepin and State of Minnesota:

Lot 15, Block 3, North Ridge Farm.

Subject to drainage and utility easements as shown on plat and as contained in the dedication clause thereof;

Subject to and together with a Declaration of Covenants, Conditions, Restrictions, Charges and Liens as contained in Document No. 5004854, office of County Recorder;

Subject to the interests shown by the following memorials and to the following rights or encumbrances set forth in Minnesota statutes chapter 508, namely:
1. Liens, claims, or rights arising under the laws of the Constitution of the United States, which the statutes of this state cannot require to appear of record;
2. Any real property tax or special assessment for which a sale of the land has not been had at the date of the certificate of title;
3. Any lease for a period not exceeding three years, when there is actual occupation of the premises under the lease;
4. All rights in public highways upon the land;
5. Such right of appeal or right to appear and contest the application as is allowed by law;
6. The rights of any person in possession under deed or contract for deed from the owner of the certificate of title;
7. Any outstanding mechanics lien rights which may exist under sections 514.01 to 514.17.

| Memorials | | | | |
|---|---|---|---|---|
| Document Number | Document Type | Date of Registration Month Day, Year Time | Amount ($) | Running In Favor Of |
| 2282725 | Mortgage | Jul 24, 1992 9:00 AM | $400,000.00 | FBS Mortgage Corporation (a NV corp) Minneapolis, MN |
| 2311591 | Assignment of Mortgage | Nov 2, 1992 12:00 PM | | First Wisconsin Trust Company, as Trustee under the Pooling & Servicing Agreement dated September 1, 1992 Series 1992-D 615 E. Michigan Milwaukee, WI Assigns document no(s). 2282725.0 |
| 2410243 | Mortgage | Aug 13, 1993 9:00 AM | $730,000.00 | Norwest Bank Minnesota, National Association St. Paul, MN |
| 2474587 | Power of Attorney | Feb 1, 1994 2:00 PM | | Jean G. Schuldt from Dennis E. Hecker |
| 2474588 | Mortgage | Feb 1, 1994 2:00 PM | $602,000.00 | Norwest Mortgage, Inc. P.O. Box 5137 Des Moines, IA |
| 2480237 | Satisfaction of Mortgage | Feb 14, 1994 12:00 PM | | Walden Leasing, Inc. Satisfies document no(s). 2410243.0 |
| 2536550 | Mortgage | Jul 28, 1994 11:00 AM | $250,000.00 | Firstar Bank of Minnesota, N.A. Arden Hills, MN |
| 2536551 | Certificate and Request for Notice | Jul 28, 1994 11:00 AM | | Firstar Bank of Minnesota, N.A. requests notice re-foreclosure (See Inst) |
| 2864882 | Assignment of Mortgage | Nov 25, 1997 4:00 PM | | Residential Funding Corporation Minneapolis, MN Assigns document no(s). 2474588.0 |
| 3205977 | Satisfaction of Mortgage | Sep 21, 1999 4:00 PM | | Satisfies document no(s). 2536550.0 |

Certificate Number:   804148          This is a non-certified copy          Page 1 of 3

EXHIBIT
tabbies
A

| | | Memorials | | |
|---|---|---|---|---|
| Document Number | Document Type | Date of Registration Month Day, Year Time | Amount ($) | Running In Favor Of |
| 3223971 | Mortgage | Nov 10, 1999 11:00 AM | $250,000.00 | Firstar Bank U.S.A., N.A., 1529 White Oak Drive, City of Waukagan, State of Illinois |
| 3473642 | Mortgage | Dec 17, 2001 1:00 PM | $650,000.00 | Mortgage Electronic Registration Systems, Inc., (a DE corp), P.O. Box 2026, City of Flint, State of Michigan Made by Dennis E. Hecker & Tamitha D. Hecker, hus & wf |
| 3473643 | Mortgage | Dec 17, 2001 1:00 PM | $250,000.00 | GMAC Mortgage Corporation, (a PA corp), 100 Witmer Road, City of Horsham, State of Pennsylvania Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, City of Flint, State of Michigan |
| 3491279 | Certificate of Release of Mortgage | Jan 25, 2002 11:00 AM | | Releases document no(s). 2282725.0 |
| 3503372 | Satisfaction of Mortgage | Feb 15, 2002 4:00 PM | | Satisfies document no(s). 2474588.0 |
| 4161898 | Assignment of Mortgage | Sep 14, 2005 4:00 PM | | U.S. Bank National Association c/o Briggs and Morgan, P.A. 2200 IDS Center, City of Minneapolis, State of Minnesota Assigns document no(s). 3223971.0 |
| 4161899 | Amendment of Mortgage | Sep 14, 2005 4:00 PM | | U.S. Bank National Association c/o Briggs and Morgan, P.A. 2200 IDS Center, Minneapolis, MN Amending Doc No 3223971. |
| 4383786 | Amendment | May 7, 2007 9:00 AM | | Amends Doc No 1651379 |
| 4638917 | Mechanic's Lien | Apr 30, 2009 12:00 PM | $6,724.45 | Condor Fireplace and Stone Company, (a MN corp) Date of Last Item: Mar 11, 2009 |
| 4704494 | Notice of Pendency and Power of Attorney to Foreclose | Nov 17, 2009 11:06 AM | | The Public Stein & Moore, P.A. Re: Mtge Doc No 3223971 |
| 4721840 | Sheriff's Certificate | Jan 19, 2010 10:59 AM | | U.S. Bank National Association Date of sale Jan. 19, 2010 Re: Mtge. Doc No. 3223971 Redemption Period: Six months from the date of said sale. |
| 4747121 | Judgment | Apr 20, 2010 3:34 PM | $324,938.72 | New Buffalo Auto Sales, LLC and Maurice J Wegener On int of Monticello Motors LLC and Dennis E Hecker |
| 4747638 | Judgment | Apr 22, 2010 11:00 AM | | Dennis Hecker |
| 4765099 | Notice of Intention to Redeem | Jun 23, 2010 4:00 PM | | The Public. Given by New Buffalo Auto Sales, LLC, (a MN llc) Regarding Sheriff's Certificate document no(s) 4721840 |
| 4768580 | Assignment | Jul 8, 2010 9:31 AM | | Palladium Holdings, LLC 301 Clifton Ave Minneapolis, MN Assigns Judgment document no(s) 4747638 |
| 4768581 | Notice of Intention to Redeem | Jul 8, 2010 9:31 AM | | The Public. Given by Palladium Holdings, LLC Regarding Sheriff's Certificate document no(s) 4721840 |
| 4773196 | Bankruptcy | Jul 23, 2010 3:21 PM | | Regarding bankruptcy of Dennis E. Hecker |
| 4773478 | Notice of Lis Pendens | Jul 26, 2010 2:33 PM | | Randall L Seaver, Trustee Leonard, O'Brien Spencer, Gale & Sayre, Ltd. To determine Plaintiff's interest in the real estate desc above. |
| 4774099 | Affidavit Regarding Foreclosure | Jul 28, 2010 10:45 AM | | Regarding Foreclosure Sale document no(s) 4747121 |
| 4774100 | Certificate of Redemption | Jul 28, 2010 10:45 AM | $218,025.30 | New Buffalo Auto Sales, LLC Date of Redemption: July 22, 2010 Regarding Foreclosure Sale document no(s) 4721840 |
| 4774101 | Quit Claim Deed | Jul 28, 2010 10:45 AM | | Palladium Holding LLC a Minnesota limited liability company 301 Clifton Ave, Minneapolis MN from New Buffalo Auto Sales LLC (a MN llc) |
| 4774102 | Mortgage | Jul 28, 2010 10:45 AM | $320,000.00 | New Buffalo Auto Sales, LLC, (a MN llc) c/o Zappia & LeVahn, Ltd 941 Hillwind Rd, Minneapolis MN Made by Palladium Holdings, LLC (a MN llc) No legal given on Mortgage |

| Memorials | | | | |
|---|---|---|---|---|
| Document Number | Document Type | Date of Registration Month Day, Year Time | Amount ($) | Running in Favor Of |
| 4774765 | Certificate of Redemption | Jul 29, 2010 4:09 PM | $561,500.00 | Palladium Holdings, LLC, (a MN llc)<br>Date of Redemption: July 29, 2010<br>Regarding Foreclosure Sale document no(s) 4721940 |
| 4774766 | Affidavit Regarding Foreclosure | Jul 29, 2010 4:09 PM | | The Public<br>Regarding Foreclosure Sale document no(s) 4721940 |

**Indexes Verified through    7/30/2010**

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of my office this 1st day of February, 1994.

**R. Dan Carlson**

**Registrar of Titles,**

**In and for the County of Hennepin and State of Minnesota.**

**HENNEPIN COUNTY RECORDER**

Minneapolis, Minnesota, 8-4- 20 1 0.

Please charge against our deposit with you for the record of the following instruments: ACCOUNT NUMBER 349

| | | | | | |
|---|---|---|---|---|---|
| | Cert | 804148 | | 3 | 00 |
| | | | | | |
| | | Fax # 952-890-0244 | | | |
| ND | | | | | |
| | | | | | |
| | | | Fax Fee | 5 | 00 |
| | | Fuller Seaver + Ramette | | | |
| | | (FIRM NAME) | TOTAL ... | 8 | 00 |
| | | Matt Swanson | | | |

HC1034 (4/00)

**Matthew Burton - RE: 10-05027 NEW BUFFALO AUTO SALES**

| | |
|---|---|
| **From:** | John Lamey <jlamey@lameylaw.com> |
| **To:** | Randy Seaver <rlseaver@fullerseaverramette.com> |
| **Date:** | Thursday, August 19, 2010 9:41 AM |
| **Subject:** | RE: 10-05027 NEW BUFFALO AUTO SALES |
| **CC:** | "mburton@losgs.com" <mburton@losgs.com> |

Randy,

I have a client that would like to make an offer on the Hecker Medina property.   He will pay the judgment lien amount (used to redeem), plus $600,000 immediate cash payment.  In exchange for this, he receives clear title to the property.

Regards,
John



**John D. Lamey III, Esq.**
980 Inwood Ave. N.
Oakdale, MN 55128
651-209-3550
651-789-2179 (fax)



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker,                                         BKY No. 09-50779

        Debtor,

---

Randall L. Seaver, Trustee,                               Case No. ADV No. 10-5027

      Plaintiff,

New Buffalo Auto Sales, LLC, A Minnesota          **PALLADIUM HOLDINGS,**
limited liability company, f/k/a New Buffalo         **LLC'S RESPONSES TO**
Chrysler, LLC and Maurice J. Wagener, and              **PLAINTIFF'S**
Palladium Holdings LLC,                          **INTERROGATORIES (SET I)**

      Defendants.

---

TO:   Plaintiff Randall L. Seaver, Trustee, and his counsel of record, Matthew R. Burton, Leonard, O'Brien, Spencer, Gale & Sayre, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402-1216, and New Buffalo Auto Sales, LLC and Maurice Wagener and their counsel of record Mychal A. Bruggeman, Mackall, Crounse & Moore, PLC, 1400 AT&T Tower, 901 Marquette Ave., Minneapolis, MN 55402.

## GENERAL OBJECTIONS

1.    Palladium Holdings, LLC ("Palladium") objects to the definitions and instructions submitted by defendant as part of its request and will respond in accordance with the requirements of the Federal Rules of Civil Procedure.

2.    Palladium objects to each interrogatory to the extent that it seeks information exempt from disclosure as work product obtained in anticipation of litigation or privileged as attorney/client communications.

3.    Palladium objects to each interrogatory to the extent that a full response thereto would require defendant to obtain information from any former employee, agent, representative, officer,



EXHIBIT

tabbies

C

director or attorney of defendant. Palladium acknowledges only a duty to provide responses based on information within its possession, custody or control.

## ANSWERS TO INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7026 and Bankruptcy Rule 33, Palladium for its answers to plaintiff's interrogatories, state as follows.

All answers are made without in any way waiving or intending to waive but, on the contrary, intending to preserve and preserving:

1.      All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

2.      The right to object to the use of these answers, or the subject matter thereof, in any subsequent proceedings or the trial of this or any other action on any ground;

3.      The right to object on any ground at any time to demand for further response to these or any other interrogatories or other discovery proceedings involving or relating to the subject matter of the answers herein; and

4.      The right to supplement and/or amend these answers based upon the recollection of persons presently unavailable or the discovery of additional documents or information.

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**     State the names and current or last known business and residence addresses and telephone numbers of all persons participating in the preparation of the Responses to these discovery requests and/or providing any of the information for inclusion in these Responses.

**ANSWER TO NO. 1:**  Joe Yuekeco, Member of Palladium Holdings, LLC, 401 South 1st

Street, Suite 1813, Minneapolis, MN 55401 and Troy Van Beek, JD, LLM, 1919 NE Broadway

Street, Suite 200, Minneapolis, MN 55413.

**INTERROGATORY NO. 2:**  Identify and describe with particularity all documents
reviewed, consulted or otherwise utilized in preparing the Responses to these discovery requests
and/or from which any information was obtained for inclusion in these Responses.

**ANSWER TO NO. 2:**  Palladium objects to this interrogatory as vague, ambiguous,

overbroad, and as calling for information that is protected by the work product doctrine and

attorney client privilege.  Subject to and without waiving those objections and the foregoing

General Objections, and Pursuant to Fed.R.Civ. P. 34 incorporated by Bankruptcy Rule 7034,

Palladium directs plaintiff to its responses to the Request for Production of Documents.

**INTERROGATORY NO. 3:**  State the names and current or last know business and
residence addresses and telephone numbers of all persons whom you may call as witnesses at
the trial of this action and/or whom you believe to have any knowledge regarding any of the
factual allegations set forth in Plaintiffs Complaint or specific defenses as to which each such
person is believed to have knowledge.

**ANSWER TO NO. 3:**  Palladium objects to this interrogatory as premature and calling for

work product.  Subject to and without waiving this objection and the foregoing General

Objections, Palladium states that it has not yet determined each witness it expects to use at trial

of this matter and will provide such information in accordance with the Federal Rules of Civil

Procedure and applicable Bankruptcy Rules.

**INTERROGATORY NO. 4:**  State the names and current or last known business and
residence addresses and telephone numbers of each person whom you may call as an expert
witness at the trial of this action, and with respect to each person identified, provided the
following information:

      a.     A complete description of said person's educational background, including the
           names, addresses, inclusive dates of attendance, and the identity of all
           certificates or degrees received from each institution of education attended after
           high school;

      b.     A complete description of said person's work history, including the names,
           addresses, telephone numbers, inclusive dates of employment and nature of work

performed for each employer since graduation form high school;

c.    A complete description of all documents of any nature whatsoever provided to said person in connection with their work on this case;

d.    A complete description of any documents whatsoever created or generated by said person in connection with their work on this case;

e.    State the subject matter about which the expert is expected to testify, and a summary of the grounds for each such opinion.

**ANSWER TO NO. 4:**    Palladium objects to this interrogatory as premature and calling for work product. Without waiving such objection, Palladium has not yet determined each expert witness it expects to use at trial of this matter and will provide such information in accordance with the Federal Rules of Civil Procedure and applicable Bankruptcy Rules.

**INTERROGATORY NO. 5:**    Describe with detail and particularity, and not in a summary manner, all communications between you and the Debtor or any other party to this action since January 1, 2010 and identify all documents related to said communications including, but not limited to, written and electronic correspondence.

**ANSWER TO NO. 5:**    On August 25, 2010, Troy Van Beek received a phone call from Dennis Hecker related to Hecker staying in the Property. As to subsequent communications please see the documents provided to you in response to your request for production of documents. Days before and after the redemption of the Property by New Buffalo and the signing of the Purchase Agreement, dated July 22, 2010, between New Buffalo and Palladium, Randall Seaver and Troy Van Beek of Palladium had conversations wherein such conversations Randall Seaver assured Troy Van Beek that there would be no interference with the redemption of the Property by New Buffalo or Palladium. There were phone calls between Tom Zappia of New Buffalo Auto Sales, Joe Yurecko and Troy Van Beek concerning the terms of the Purchase Agreement and issues related thereto. Palladium objects to the remainder of this interrogatory as vague, ambiguous, overbroad and as calling for information that is protected by the work product doctrine and attorney-client privilege. Subject to and without waiving those objections and the foregoing General Objections, Palladium states that pursuant to Fed. R. Civ. P. 34 incorporated

by Bankruptcy Rule 7034, Palladium directs plaintiff to its responses to the Request for

Production of Documents.

**INTERROGATORY NO. 6:**   Identify all agreements, whether written or oral, reached
between you and Palladium Holdings LLC and identify all documents related thereto.

**ANSWER TO NO. 6:**   Palladium objects to this interrogatory as vague and ambiguous.

**INTERROGATORY NO. 7:**   Describe with detail and particularity, and not in a summary
manner, when you first became aware that the Debtor had commenced a bankruptcy case and
identify all documents related thereto.

**ANSWER TO NO. 7:**   Palladium does not recall exactly when it first became aware that the

Debtor had commenced a bankruptcy.  However, Palladium did know about the filing of the

bankruptcy petition prior to it signing the Purchase Agreement on July 22, 2010 with New

Buffalo, due to its conversations with the Trustee Randall Seaver.

**INTERROGATORY NO. 8:**   Describe with detail and particularity, and not in a summary
manner, your earliest of knowing that any defendant was aware that the Debtor had commenced
a bankruptcy case and identify all documents related thereto.

**ANSWER TO NO. 8:**   Palladium does not recall exactly when it first became aware that the

Debtor had commenced a bankruptcy. Palladium does not have any knowledge of what New

Buffalo or Maurice Wagener knew about the Hecker bankruptcy filing. Palladium assumes New

Buffalo and Maurice Wagener knew about the Hecker bankruptcy filing due to their status as

creditors of Hecker.

**INTERROGATORY NO. 9:**   Identify all of your files and records related to the Debtor and
1615 Northridge Drive, Medina, MN 55391.

**ANSWER TO NO. 9:**   Palladium objects to this interrogatory as vague, ambiguous, overbroad

and as calling for information that is protected by the work product doctrine and the attorney-

client privilege.  Subject to and without waiving those objections and the foregoing General

Objections, Palladium states that pursuant to Fed. R. Civ. P. 34 incorporated by Bankruptcy Rule

7034, Palladium directs plaintiff to its responses to the Request for Production of Documents.

**INTERROGATORY NO. 10:** Identify all valuation records or equity analysis in your
possession or control related to 1615 Northridge Drive, Medina, MN 55391.

**ANSWER TO NO. 10:** Palladium review tax records related to the Property prior to entering

into the Purchase Agreement. Palladium objects to the remainder of this interrogatory as

protected by the work product doctrine and attorney-client privilege. Subject to and without

waiving those objections and the foregoing General Objections, Palladium states that pursuant to

Fed. R. Civ. P. 34 incorporated by Bankruptcy Rule 7034, Palladium directs plaintiff to its

responses to the Request for Production of Documents.

**INTERROGATORY NO. 11:** Describe with detail and particularity and not in a summary
manner all facts which support your second affirmative defense (paragraph 40 of Answer)
(abandonment of North Ridge).

**ANSWER TO NO. 11:** Palladium believes that the Property was abandoned due to the sale of

the bankruptcy estate's interests in the Property to Ralph Thomas for $75,000, the granting of a

deed to Ralph Thomas from the Trustee, and the lack of redemption of the Property by the

Trustee during the applicable redemption period. Additionally property was abandoned because

the value of the lien on the date of the bankruptcy was zero.

**INTERROGATORY NO. 12:** Describe with detail and particularity and not in a summary
manner all facts which support your third affirmative defense (paragraph 41 of Answer) (fully
administered).

**ANSWER TO NO. 12:** Palladium believes that the Property was fully administered due to the

sale of the bankruptcy estate's interests in the Property to Ralph Thomas for $75,000, the

granting of a deed to Ralph Thomas from the Trustee, and the lack of redemption of the Property

by the Trustee during the applicable redemption period. Additionally, the Property was fully

administered because the value of the lien on the date of the bankruptcy was zero.

**INTERROGATORY NO. 13:**  Describe with detail and particularity and not in a summary manner all facts which support your fourth affirmative defense (paragraph 42 of Answer) (conveyed interest).

**ANSWER TO NO. 13:**  Palladium believes that the Property was conveyed due to the sale of the bankruptcy estate's interests in the Property to Ralph Thomas for $75,000, the granting of a deed to Ralph Thomas from the Trustee, and the lack of redemption of the Property by the Trustee during the applicable redemption period.

**INTERROGATORY NO. 14:**  Describe with detail and particularity and not in a summary manner all facts which support your fifth affirmative defense (paragraph 43 of Answer) (no standing).

**ANSWER TO NO. 14:**  The Trustee has no standing to bring this action because the estate has no interest in the Property.  The estate's interest in the Property ceased when the Trustee sold the bankruptcy estate's interests in the Property to Ralph Thomas for $75,000 and thereafter granted a deed to Ralph Thomas. Moreover, the estate's interest in the property was forever lost because the Trustee failed to redeem the Property during the applicable redemption period.

**INTERROGATORY NO. 15:**  Describe with detail and particularity and not in a summary manner all facts which support your sixth affirmative defense (paragraph 44 of Answer) (not a preference).

**ANSWER TO NO. 15:**  On the date in which Hecker filed bankruptcy, the Property had no equity due to the number of encumbrances (mortgages, tax liens, etc.).  Recognizing that the Property was of no value to the bankruptcy estate, the Trustee sold the estate's interest in the Property to Ralph Thomas for $75,000, thereby removing the Property from the estate. Moreover, the Trustee failed to redeem the Property during the applicable redemption period. Additionally, Palladium is a good faith purchaser of the Property.

**INTERROGATORY NO. 16:**  Describe with detail and particularity and not in a summary manner all facts which support your seventh affirmative defense (paragraph 45 of Answer) (accord, satisfaction, et al.).

**ANSWER TO NO. 16:**  There was an accord and satisfaction by virtue of the Trustee entering into an agreement with Ralph Thomas whereby the Trustee agreed to convey the bankruptcy estate's interest in the Property in exchange for $75,000.

**INTERROGATORY NO. 17:**  Describe with detail and particularity and not in a summary manner all facts which support your eighth affirmative defense (paragraph 47 of Answer) (no lien or transfer).

**ANSWER TO NO. 17:**  There is no lien or transfer to preserve due to the sale of the bankruptcy estate's interests in the Property to Ralph Thomas for $75,000, the granting of a deed to Ralph Thomas from the Trustee, and the lack of redemption of the Property by the Trustee during the applicable redemption period. Additionally, Palladium was a good faith purchaser of the Property.

**INTERROGATORY NO. 18:**  Describe with detail and particularity and not in a summary manner all facts which support your ninth affirmative defense (paragraph 48 of Answer) (no value).

**ANSWER TO NO. 18:**  On the date of the bankruptcy filing, the bankruptcy estate had no equity in the Property due to the numerous encumbrances on the Property in the form of mortgages, tax liens, and judgments. The fact that the Trustee sold the estate's interest in the property to Ralph Thomas for $75,000 and also failed to redeem the Property during the applicable redemption period is evidence of the estate's lack of equity in the Property. Additionally, the value of the lien on the date of filing bankruptcy was zero.

**INTERROGATORY NO. 19:**  Describe with detail and particularity and not in a summary manner all facts which support your tenth affirmative defense (paragraph 49 of Answer) (valued created by Palladium).

**ANSWER TO NO. 19:**  Palladium entered into a Purchase Agreement with New Buffalo as a good faith purchaser.  Palladium states that pursuant to Fed. R. Civ. P. 34 incorporated by Bankruptcy Rule 7034, Palladium directs plaintiff to its responses to the Request for Production of Documents.

**INTERROGATORY NO. 20:**  Describe with detail and particularity and not in a summary manner all facts which support your eleventh affirmative defense (paragraph 50 of Answer) (three other liens).

**ANSWER TO NO. 20:**  There are actually more than three other liens on the Property that existed at the time of the bankruptcy filing.  The Trustee is directed to review the certificate of title for the Property which is on file in the torrens office. Palladium states that pursuant to Fed. R. Civ. P. 34 incorporated by Bankruptcy Rule 7034, Palladium directs plaintiff to its responses to the Request for Production of Documents.

**INTERROGATORY NO. 21:**  Describe with detail and particularity and not in a summary manner all facts which support your twelfth affirmative defense (paragraph 51 of Answer) (indispensable party).

**ANSWER TO NO. 21:**  The Trustee seeks to obtain the Property after the estate's interest in the Property was conveyed to Ralph Thomas for $75,000.  The Trustee has not yet made Ralph Thomas a party to this action.

| | |
|---|---|
| Subscribed and sworn to before me this 13th day of October, 2010.<br><br>Notary | **PALLADIUM HOLDINGS, LLC**<br><br>By: <br><br>Its: Chief Manager |

CORY LEWIS HEINEN
Notary Public
Minnesota
My Commission Expires January 31, 2011

AS TO OBJECTIONS:

**BERNICK, LIFSON, GREENSTEIN
GREENE & LISZT, P.A.**

Dated: Oct 13, 2010

Chrystal Donnell #0325685
1200 The Colonnade
5500 Wayzata Boulevard
Minneapolis, Minnesota 55416-1251
(763) 546-1200
(763) 546-1003 (fax)

*Attorneys for Palladium Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

| | |
|---|---|
| In re: | BKY No. 09-50779 |
| | |
| Dennis E. Hecker, | |
| | |
| Debtor. | |

_____

| | |
|---|---|
| Randall L. Seaver, Trustee, | |
| | Adv. No.: 10-5027 |
| Plaintiff, | |
| | |
| vs. | **MEMORANDUM IN SUPPORT OF MOTION** |
| | **FOR SUMMARY JUDGMENT** |
| New Buffalo Auto Sales, LLC, | |
| a Minnesota limited liability company, | |
| f/k/a New Buffalo Chrysler, LLC, | |
| Maurice J. Wagener and Palladium Holdings | |
| LLC, | |
| | |
| Defendants. | |

_____

Plaintiff Randall L. Seaver, Trustee ("**Trustee**") of the bankruptcy estate of Dennis E. Hecker ("**Debtor**" or "**Hecker**"), submits this Memorandum in Support of his Motion for Summary Judgment against Defendants New Buffalo Auto Sales, LLC, f/k/a New Buffalo Chrysler, LLC ("**NBAS**"), Maurice J. Wagener ("**MJW**") (collectively, "**Wagener**") and Palladium Holdings LLC ("**Palladium**").

The defined terms in this Memorandum shall have the same meaning as those contained in the verified Notice of Hearing and Motion for Summary Judgment served and filed herewith. The facts relevant to this motion are contained in the verified Notice of Hearing and Motion.

## FACTUAL BACKGROUND

Defendant NBAS is believed to be a Ford dealer owned or controlled by Defendant Wagener.

Defendant Palladium is a Minnesota limited liability company.

Prior to May 7, 2009, Defendants NBAS and Wagener had a claim against the Debtor in an amount approximating $324,938.72.

In January, 2009, Defendants NBAS and Wagener commenced an action in Hennepin County, Minnesota, against the Debtor to collect on the debt (Hennepin County Court File No. 27-CV-09-2692).

On or about May 7, 2009, a judgment in the amount of $324,938.72 was entered and docketed against the Debtor and in favor of Defendants NBAS and Wagener (the "**Judgment**").

At the time of filing, Debtor owned real estate located at 1615 Northridge Drive, Medina, MN 55391 and legally described as follows:

Lot 15, Block 3, Northridge Farm, Hennepin County, Minnesota

("**Northridge**").

The Judgment was obtained within 90 days prior to the commencement of this bankruptcy case.

Northridge was a non-exempt asset of the debtor.

U.S. Bank held the first mortgage on Northridge. It obtained stay relief, foreclosed the mortgage and purchased Northridge at the sheriff's sale for $213,263.00.

The second and third mortgage holders, whose original principal balances totaled approximately $900,000.00, did not redeem.

It appears that Northridge has a value of in excess of $800,000.00. The county tax value for Northridge is $1,838.000.00.

In February, 2010, the Trustee signed and had delivered to Attorney William Skolnick a deed purporting to transfer the estate's interest in the Northridge property to Ralph Thomas ("**Trustee Deed**").

The Trustee's Deed to Ralph Thomas was never registered. The certificate of title as it existed on July 30, 2010 still listed Dennis E. Hecker as the owner.

Pursuant to Minn. Stat. §508.47(1), the Trustee's Deed did not act as a conveyance, but only a contract between the parties. The act of registration was the operative act necessary to convey Northridge. See, *Mill City Heating & Air Conditioning Co. v. Nelson*, 351 N.W.2d 362, 364-65 (Minn. 1984) ("Anyone dealing with registered land need look no further than the certificate of title for any transaction that might affect the land.") No such registration ever took place, and at all relevant times, the certificate of title remained in the name of Hecker.

On April 20, 2010, the Judgment was memorialized upon the certificate as Doc. No. 4747121. The memorialization acted as conveyance of an interest in the Northridge property.

Because the Trustee's Deed to Ralph Thomas was not registered, there was no conveyance of the Northridge property to Ralph Thomas from the Trustee. Because the Trustee's Deed was not registered, the Defendants were then able to memorialize the Judgment on April 20, 2010. Had the Trustee's Deed been registered prior to that time, and the conveyance had thus been made to Ralph Thomas, the Defendants would have been unable to memorialize the Judgment on the certificate.

On July 23, 2010, prior to redemption recording by any Defendant, a Notice of Bankruptcy Case was filed by the Trustee and memorialized on the certificate of title. On July

26, 2010, prior to redemption recording by any Defendant, this adversary proceeding was commenced, and a Notice of Lis Pendens was memorialized on the certificate of title.

On or about July 22, 2010, Defendants NBAS and Wagener through use of the Judgment, redeemed from the U.S. Bank foreclosure by tendering less than $225,000 to the Hennepin County Sheriff (the "**Redemption**"). The redemption certificate was memorialized on the certificate of title on July 28, 2010.

That same day, Defendants NBAS and Wagener sold their interest in Northridge to Palladium, which had financed the U.S. Bank redemption.

As a result of the Judgment and subsequent Redemption, Defendants now hold an interest in Northridge.

In addition to the foregoing, on about April 29, 2009, Koch Group Mpls., LLC obtained a judgment against Hecker in the amount of $813.67 (Hennepin County File No. 27-CV-25766) (the "**Koch Judgment**").

About a year later, and well after the commencement of this case, the Koch Judgment was recorded on the Torrens Certificate on April 22, 2010 ("**Koch Proceeding**").

On or about July 8, 2010, Palladium recorded a notice of intent to redeem from the Koch Judgment.

On or about July 20, 2010, apparently due to payment by Debtor, the Koch Judgment was satisfied.

Despite the satisfaction of the Koch Judgment, Palladium recorded a certificate of redemption in the amount of $561,500 on or about July 29, 2010 as document Number 4774765.

Since he learned the facts surrounding the execution of the Trustee Deed, Ralph Thomas has never taken the position that the deed acted as a conveyance to him. In fact, Thomas has

4

returned the original deed to the Trustee and additionally delivered a quit claim deed to the Trustee. Thomas was unaware of the fraud perpetrated upon the Trustee by Hecker.

Despite their knowledge of the pending Chapter 7 bankruptcy case, none of the Defendants to this action ever sought stay relief prior to engaging in their post-petition actions as described in the Amended Complaint.

## LEGAL ARGUMENT

### I. STANDARDS FOR SUMMARY JUDGMENT.

Summary judgment allows the Court to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes to Rule 56; *Moratzka v. VISA U.S.A. (In re Calstar, Inc.),* 159 B.R. 247, 250-52 (Bankr. D. Minn. 1993). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Initially, it is the burden of the movant to inform the Court of the basis for the motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The movant must show there is an absence of evidence to substantiate the non-moving party's case. *Id.,* at 325. To that end, the Trustee has discharged his burden by asserting that the record does not contain a triable issue and by identifying that part of the record which supports his assertions. *See Id.,* at 323.

Once the movant has made its showing, the burden of production shifts to the non-moving party which must "go beyond the pleadings and by [its] ... own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' " and establish that there are specific and genuine issues of material fact warranting a trial.  *Celotex,* 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(c)).  The non-moving party cannot cast some metaphysical doubt on the moving party's assertion.  *Matsushita Elec. Indust. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The non-moving party must present probative evidence supporting its case sufficient "to require a . . . judge to resolve the parties' differing versions of the truth at trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288-89 (1968)).  Any affidavits must "be made on personal knowledge, must set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  If, however, the evidence tendered is "merely colorable," or is "not significantly probative," the non-moving party has not carried its burden and the court must grant summary judgment to the moving party.  *Anderson*, 477 U.S. at 249-50.

The Trustee believes summary judgment is appropriate in this case.  It appears that Defendants are in accord.

## DEFENDANTS' JUDGMENTS ARE AVOIDABLE AS PREFERENTIAL TRANSFERS

## II.  WAGENER IS LIABLE FOR HAVING RECEIVED A PREFERENTIAL TRANSFER.

Section 547 of the Bankruptcy Code, relating to preferences, serves two congressional goals:

First, by bringing back into the debtor's estate certain transfers made shortly before the filing of the bankruptcy petition, it creates a disincentive for creditors

6

to attack a financially unstable debtor. Second, it promotes equity among unsecured creditors by forcing these creditors to share the debtor's unencumbered assets on a pro rata basis.

*Matter of Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 227 (5th Cir. 1988).

Section 547(b) states:

Except as provided in subsection (c) of this section, the Trustee may avoid any transfer of an interest of the debtor in property—

    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made--
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if --
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. §547(b).

The facts asserted in the Amended Complaint support each element of a preferential transfer with regard to the Wagener Prepetition Transfer.

1. <u>Transfer of Property of the Debtor</u>: The Bankruptcy Code defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, including retention of title as a security interest." 11 U.S.C. §101(54).

By obtaining the Wagener Judgment, Wagener obtained an unperfected lien on real property of the Debtor (Northridge). That unperfected lien was deemed, by law, to have been

perfected immediately prior to the commencement of Debtor's bankruptcy case. 11 U.S.C. §547(e)(2)(C).

Northridge was non-homesteaded real property owned by the Debtor and Wagener's lien interest was a transfer of property of the Debtor. See, *In re May*, 310 B.R. 405, 415 (Bankr. E. D. Ark. 2004) (recording was a "transfer" as "recording operates to encumber property and detract from the rights of the property owner").

2. <u>Transfer for the Benefit of a Creditor</u>: Wagener was a creditor of the Debtor pursuant to the Wagener Judgment.

3. <u>Transfer within 90 Days of the Petition Date</u>: The Wagener Prepetition Transfer was made within 90 days of the commencement of all of this bankruptcy case.

4. <u>Transfer Made on Antecedent Debt</u>: There is no dispute that the Wagener Prepetition Transfer was on account of an antecedent debt.

5. <u>The Debtor's Insolvency</u>: The Debtor was actually insolvent and is presumed to have been insolvent at the time of the Wagener Pre-Petition Transfer. The Trustee has opined in the verified Notice of Hearing and Motion that the Debtor was, in fact, insolvent. Further, the Debtor is deemed to have been insolvent by way of 11 U.S.C. §547(f).

6. <u>Chapter 7 Liquidation Test</u>: As a result of the transfer, Wagener will receive a total of $400,000.00, which is more than a 100% dividend. The Wagener Prepetition Transfer allowed Wagener to receive more than Wagener would have received in a liquidation of the estate under Chapter 7 as required by 11 U.S.C. §547(b)(5). If Wagener had not received the Wagener Prepetition Transfer, he would have been an unsecured creditor in this bankruptcy. Instead, he received value of $400,000.00, which exceeds his judgment by about $75,000.00. The assets of the estate will not be sufficient to pay unsecured creditors' claims in full. The

claims register reflects over $195,336,716 in unsecured claims. The IRS has filed claim #88 asserting a secured claim of over $3.1 million and a priority claim of over $283,000.00. See, claims register for case 09-50779. Even if the trustee had $10 million to distribute to unsecured creditors, which is not likely, these creditors would receive only pennies on the dollar, while Wagener has received, or will receive over 100%.

Based on the foregoing, a judgment pursuant to 11 U.S.C. §547 against Wagener is appropriate.

### III. PALLADIUM RECEIVED A PREFERENTIAL TRANSFER.

Palladium stands in the shoes of Koch, having taken an assignment of the Koch Judgment. The Koch Judgment may be avoided as a preferential transfer. The facts asserted in the Amended Complaint support each element of a preferential transfer with regard to the Koch Prepetition Transfer. Further, Palladium is a mediate, or immediate, Transferee of the Wagener position.

1. <u>Transfer of Property of the Debtor</u>: The Bankruptcy Code defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, including retention of title as a security interest." 11 U.S.C. §101(54). By obtaining the Koch Judgment, Koch obtained an unperfected lien on real property of the Debtor. That unperfected lien is deemed, by law, to have been perfected immediately prior to the commencement of Debtor's bankruptcy case. 11 U.S.C. §547(e)(2)(C). Said judgment lien was assigned to Palladium.

Northridge was property owned by the Debtor and Palladium's lien interest (via Koch) was a transfer of property of the Debtor.

2.      <u>Transfer for the Benefit of a Creditor</u>: Koch was a creditor of the Debtor pursuant to the Koch Judgment.  Palladium took an assignment of that position.

3.      <u>Transfer within 90 Days of the Petition Date</u>:  The Koch Prepetition Transfer was made within 90 days of the commencement of all of this bankruptcy case.

4.      <u>Transfer Made on Antecedent Debt</u>: There is no dispute that the Koch Prepetition Transfer was on account of an antecedent debt.

5.      <u>The Debtor's Insolvency</u>:  The Debtor was actually insolvent and is presumed to have been insolvent.  The Trustee has opined in the verified Notice of Hearing and Motion that the Debtor was, in fact, insolvent.  Further, the Debtor is deemed to have been insolvent by way of 11 U.S.C. §547(f).

6.      <u>Chapter 7 Liquidation Test</u>: It appears that the Koch redemption was improper, as apparently the Koch Judgment was paid in full prior to redemption.  However, if the redemption is valid, then it is avoidable.  The Prepetition Transfer allowed Palladium, pursuant to the Koch Judgment, to receive more than Palladium would have received in a liquidation of the estate under Chapter 7 as required by 11 U.S.C. §547(b)(5).  If Palladium had not received the Koch Prepetition Transfer, it would have been an unsecured creditor in this bankruptcy.  Even if the trustee had $10 million to distribute to unsecured creditors, which is not likely, these creditors would receive only pennies on the dollar, while Wagener has received, or will receive over 100%.

Based on the foregoing, a judgment pursuant to 11 U.S.C. §547 against Palladium is appropriate.

## **DEFENDANTS' JUDGMENTS ARE AVOIDABLE AS UNAUTHORIZED TRANSFERS**

### IV.     UNAUTHORIZED TRANSFERS PER 11 U.S.C. §549.

The Trustee can avoid each the Wagener Post-Petition Transfer and the Palladium Post-Petition Transfer (the "**Post-Petition Transfers**") for the benefit of the bankruptcy estate as an unauthorized post-petition transfers of estate property under 11 U.S.C. §549(a).  That statute provides:

> The Trustee may avoid a transfer of property of the estate—
>
> (1) that occurs after the commencement of the case; and
>
> *          *          *
>
> (2)(B) that is not authorized under this title or by the court.

11 U.S.C. §549(a).

Here the Trustee has met his burden of showing by a preponderance of the evidence the four elements of a post-petition transfer.  *See, Gibson et al. v. U.S. (In re Russell)*, 927 F. 2d 413, 417-18 (8th Cir. 1991); *In re Nordic Village,* 915 F. 2d 1049, 1055 (6th Cir. 1990), *overruled on other grounds*, *United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992); *Consolidated Partners Investment Co. v. Lake*, 152 B.R. 485, 488 (Bankr. N.D. Ohio 1993) (Trustee must show elements of post-petition transfer by preponderance of the evidence).  Uncontroverted evidence in the record shows: 1) the Post-Petition Transfers occurred post-petition; 2) the Post-Petition Transfers involved estate property; 3) estate property was transferred; and 4) the Post-Petition Transfers were not authorized by the Court or the Bankruptcy Code.  *See, Gibson* at 417-18.

1.      The Post-Petition Transfers occurred on April 20 and 22, 2010, over ten months after the commencement of this bankruptcy case.

2.  Post-Petition Transfers were a "transfer of an interest of the debtor in property" as the certificate of title was still in Debtor's name and was property of the estate. See, 11 U.S.C. §541 and Minn. Stat. §508.25(6). Further, "No voluntary instrument of conveyance purporting to convey . . . registered land . . . shall take effect as a conveyance . . . but shall operate only as a contract between the parties . . . . The act of registration shall be the operative act to convey or affect the land." Minn. Stat. §508.47(1).

3.  The Bankruptcy Code defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, including retention of title as a security interest". 11 U.S.C. §101(54). Defendants' memorializing their respective judgments on the certificate of title, at time when the Trustee held title, is an avoidable transfer. *See, Bergquist v. Fidelity Mortgage Decisions Corp., (In re Alexander)*, 219 B. R. 255, 258 (Bankr. D. Minn. 1998).

4.  The Post-Petition Transfers were not authorized by the Bankruptcy Court or by any provision of the Bankruptcy Code, and therefore, the fourth element of a post-petition transfer under §549 is satisfied. The Court did authorize the Trustee's transfer of real property to Ralph Thomas (and no such transfer was ever recorded). It also appears that Thomas did not ever accept the deed as a "transfer."

Under Bankruptcy Rule 6001, Defendants have the burden of proving the validity of the Post-Petition Transfers. "Any entity asserting the validity of a transfer under §549 of the Code shall have the burden of proof." Fed. R. of Bankruptcy Proc. 6001; *see also, In re Scheu*, 356

B.R. 751, 754 (Bankr. D. Idaho 2006).  <u>Defendants cannot meet their burden as the Post-Petition</u>
<u>Transfers were not approved by this Court or by law</u>.

Section 550(a) imposes strict liability on Wagener as the initial transferee of the bankruptcy estate property, regardless of the principals' knowledge of the Debtor's financial circumstances or the source of the funds.  *See, Nordic Village,* 915 F. 2d at 1055; *Iannacone v. IRS (In re Bauer)*, 318 B.R. 697, 700 (Bankr. D. Minn. 2005) *citing, Leonard v. Mountainwest Financial Corp. d/b/a Prime Option Services (In re Whaley)*, 229 B. R. 767, 773 (Bankr. D. Minn. 1999).  "As a general rule, §550(a) imposes liability on all recipients in a chain of transfers of fraudulently conveyed property." *Whaley* at 773 (citations omitted).

Wagener will argue that the Trustee entered into a settlement with the Debtor in which he agree to exchange the payment of $75,000.00 for the estate's interest in Northridge, a piano and the release of a contempt claim against Christi Rowan and that, therefore, the Trustee had no interest in Northridge.  Wagener's argument is flawed.

This Court authorized the Trustee to deliver a quit claim deed to Ralph Thomas.  However, Ralph Thomas was unaware of the purported transaction brought about as a result of Hecker's fraud.  Thomas never accepted a transfer of the Northridge property, never recorded the quit claim deed, and in fact, has returned the quit claim deed to the Trustee, together with a separate quit claim deed from Thomas.

Additionally, these Defendants would be estopped from asserting that the mere execution of the Thomas deed meant the estate no longer had an interest in the property.  That is so, because the <u>only</u> reason that these Defendants were able to memorialize their liens against Northridge is because the Thomas deed had not been recorded.

In fact, the title insurance commitment obtained by and relied upon by Palladium states that as of July 14, 2010:

> "Dennis E. Hecker, subject to the rights of US Bank, National Association, and junior creditors which have filed a Notice of Intent to redeem from mortgage foreclosure."

Burton Aff. at page 37.

If the Thomas deed had been recorded, and the estate had no longer held an interest in the Northridge property, these Defendants would not have been able to memorialize their lien against Northridge and thus could not have redeemed. So, the Defendants cannot possibly argue that such a transfer to Thomas occurred, because, if it did, then none of the Defendants had any right to redeem, because they illegally memorialized a lien upon property which they had no right to encumber. The Defendants were only able to record against Northridge because Hecker was named on the certificate of title.[1]

The Koch Post-Petition Transfer occurred on April 22, 2010, over ten months after the commencement of this bankruptcy case. The Koch Post-Petition Transfer, too, was a transfer of bankruptcy estate property. The Bankruptcy Code defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, including retention of title as a security interest". 11 U.S.C. §101(54). Palladium's memorializing the Koch Judgment on the certificate of title was a transfer of the estate's property. *See, Bergquist v. Fidelity Mortgage Decisions Corp., (In re Alexander)*, 219 B. R. 255, 258 (Bankr. D. Minn. 1998). Lastly, the Koch Post-Petition Transfer

---

[1] The registrar of titles creates a certificate of title, which is issued to the owner. See Minn.Stat. §§508.34, 508.35. After the issuance of a certificate of title, any conveyance, lien, instrument, or proceeding that would affect the title to the now registered Torrens property must be filed and registered with the registrar of titles in the county where the property is located in order to affect the title to the Torrens property. Minn.Stat. §508.48 (2004). Any such recording must match the owner listed on the certificate.

was not authorized by the Bankruptcy Court or by any provision of the Bankruptcy Code, and therefore, the fourth element of a post-petition transfer under section 549 is satisfied.

## V.    NONE OF THE DEFENDANTS HAVE ANY DEFENSE TO THE TRUSTEE'S AVOIDANCE AND RECOVERY CLAIMS.

Under Bankruptcy Rule 6001, Palladium has the burden of proving the validity of the Koch Post-Petition transfer. "Any entity asserting the validity of a transfer under §549 of the Code shall have the burden of proof."  Fed. R. of Bankruptcy Proc. 6001; *see also, In re Scheu*, 356 B.R. 751, 754 (Bankr. D. Idaho 2006).  Palladium cannot meet its burden as the Koch Post-Petition Transfer was not approved by this Court or at law.

Likewise, Palladium is not a good faith transferee pursuant to 11 U.S.C. §549.   In order to defeat the Trustee's claim, Palladium must show, as to real property, that it was (1) a good faith purchaser, (2) without knowledge of the commencement of the case, (3) for present, fair equivalent value and (4) unless a copy of the notice of petition was filed before such transfer is perfected that a bona fide purchaser of such real property could not acquire an interest superior to the interest of the purported good faith purchaser.  11 U.S.C. §549(c).

It is only a "good faith purchaser," without knowledge of the commencement of the bankruptcy case, that qualifies for the defense.  The Trustee believes that the analysis of "good faith purchaser" is the same as under 11 U.S.C. §548.  "Good faith" is not defined by the Bankruptcy Code and is a determination made on a case-by case-basis.  *In re Seitz*, 400 B.R. 707, 721 (Bankr. E.D. Mo. 2008), citing, *Brown v. Thiord Nat'l Bank (In re Sherman),* 67 F.3d 1348 (8th Cir. 1995), citing, *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983).  In determining whether a transferee acted in good faith,

> [T]he courts look to whether the transferee objectively "knew or should have known" instead of examining the transferee's actual knowledge from a subjective standpoint. In

other words, a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.

*Seitz*, at 721, citing, *Roco* at 984.

In this case, Palladium knew that Hecker was in Chapter 7 bankruptcy and that Northridge was where the Debtor was residing. This is established by the Palladium's responses to the Trustee's interrogatories (Exhibit B to the Verified Notice of Hearing), as well as the Trustee's recording of a Notice of Commencement of Bankruptcy Case on July 23, 2010 and a lis pendens on July 26, 2010. See, Exhibit A to Notice of Hearing (Certificate of Title).

Palladium is not a good transferee as it knew of the Debtor's bankruptcy and Palladium's sole purpose was to "use the system" to obtain a good deal. Standing in the shoes of a preexisting creditor, Palladium should not benefit more than other unsecured creditors in this case.

The Trustee recorded each a notice of bankruptcy case and lis pendens prior to each of the following recordings on the certificate of title:

    a.      Affidavit regarding foreclosure (July 28, 2010)

    b.      Certificate of Redemption (July 28, 2010) (New Buffalo's Filing)

    c.      Quitclaim Deed to Palladium (July 28, 2010)

    d.      Mortgage (July 28, 2010)

    e.      Certificate of Redemption (July 29, 2010) (Palladium)

    f.      Affidavit Regarding Foreclosure (July 29, 2010)

None of the Defendants' recordings regarding the foreclosure or subsequent events predate the Trustee's filings. As such they were on notice of the bankruptcy case and the

Trustee's position that their interests were avoidable. The Defendants took subject to the Trustee's avoidance powers.

Like Wagener, Palladium will argue that the Trustee entered into a settlement with the Debtor in which he agreed to exchange the payment of $75,000.00 for the estate's interest in Northridge, a piano and the release of a contempt claim against Christi Rowan and that, therefore, the Trustee had no interest in Northridge. As discussed, above, with respect to Wagener, Palladium's argument fails.

There is no conceivable way the Trustee has abandoned the claims asserted herein. The Bankruptcy Code, in §554, delineates the way that property may be abandoned by a Trustee. See, i.e., *In re Mandrell*, 39 B.R. 455, 459 (Bankr. Tenn. 1984). None have occurred with respect to the Trustee bringing these Defendants' interests into the estate pursuant §550.

## VI. THE TRUSTEE IS ENTITLED TO ALL OF DEFENDANTS' INTERESTS IN NORTHRIDGE WITHOUT SETOFF OR CREDITS.

All that each Defendant has received is avoidable by the Trustee. In other words, the Trustee may recover each Defendant's interest in Northridge together with moneys paid to Wagener.

The avoidance of a transfer pursuant to the Trustee's avoiding powers gives the Trustee the right to recover, for the benefit of the estate, the property transferred. Bankruptcy Law Manual §8.37 (5th ed. 2009) (Dreher), citing 11 U.S.C. §550(a). The property or its value may be recovered from the initial transferee, the entity for whose benefit the transfer was made, or the immediate or mediate transferee of the initial transferee. *Id.* In this case, each Defendant is an initial transferee or should be treated as one. There is no dispute that Wagener is an initial transferee. Palladium, too, is an initial transferee as its pre- and post-petition transfers were

made for Palladium's benefit. *Id.* at note 2, citing, *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes.").

Even if Palladium was not an initial transferee, it cannot assert a good faith defense as did not take property for value, in good faith, and without knowledge of the voidability of the transfer. See, 11 U.S.C. §550(b)(1). The phrase "knowledge of the avoidability of the transfer avoided" in §550(b)(1) has been construed to mean that the transferee knew of facts which would lead reasonable people to believe that the transferred property was recoverable; it does not require that the transferee have complete understanding of all relevant facts and receipt of attorney's opinion that the transfer is voidable. Bankruptcy Law Manual, §8:37, n. 17.

The Trustee has established that the Wagener Prepetition Transfer and the Wagener Post Petition Transfer are avoidable. The effect of either is to bring Wagener's interest into the bankruptcy estate pursuant to 11 U.S.C. §541(a)(3).[2] However, Wagener converted that interest into an $80,000 payment and a $320,000 mortgage. In short, the items that Wagener received from Defendant Palladium are the proceeds of estate property. As such, those, too, are estate property and are recoverable by the Trustee. See, 11 U.S.C. §541(a)(6); *In re Williams*, 104 B.R. 296 (Bankr. C.D. Cal. 1989) (Trustee could avoid unauthorized postpetition transfer of proceeds from sale of debtor's realty).

Likewise, the Trustee may recover Palladium's interest whether it be (a) the Koch Judgment, (b) the Palladium Post Petition Transfer, or (c) Palladium's receipt of the Wagener interests. Each of the same is an avoidable transfer. Further, Palladium's post petition

recordings on the certificate of title violated 11 U.S.C. §549 (and 11 U.S.C. §362) and are, therefore, likewise recoverable.

In short, as to each Defendant, the Trustee is entitled the entirety of their positions.

## VII. ALTERNATIVELY, THE TRUSTEE IS ENTITLED TO A MONEY JUDGMENT.

Under §550, the Trustee is entitled to the alternative relief of a money judgment against each Defendant. The case of *In re Seitz*, 400 B.R. 707, 722-23 (Bankr. E.D. Mo. 2008) provides as follows:

> The Bankruptcy Code defines neither "value" nor sets forth from what time value should be determined. … However, there is both case law and a strong equitable argument for allowing the Trustee to recover either greater of the value of the transferred property at the transfer date or the value at the time of the recovery. *Id.*; *Langhorne v. Warmus (In re Am. Way Serv. Corp.),* 229 B.R. 496, 530-31 (Bankr. S.D. Fla. 1999); *Govaert v. B.R.E. Holding Co., Inc. (In re Blitstein),* 105 B.R. 133, 137(Bankr. S.D. Fla. 1989); see also COLLIER ON BANKRUPTCY ¶550.02[3] (15th ed. rev.2005). As the *In re Brun* court reasoned:
>
>> [allowing the Trustee to recover the value of the property as of the time of the recovery, rather than at the time of the transfer] makes sense. As noted by COLLIER, this result is consistent with the well-established purpose of §550, to restore the estate to the position it would have occupied had the property not been transferred. Moreover ... a Trustee typically has the ability to recover the property transferred, which would allow the estate to benefit from any appreciation. Section 550(e) demonstrates the intent of Congress that any appreciation not attributable to the actions of a good faith transferee inure to the benefit of the estate.
>
> *In re Brun,* 360 B.R. at 674 (internal citations omitted).
>
> The Court recognizes that the courts generally assume that the value of fraudulently transferred property is determined as of the date of the transfer. As implied in *In re Brun,* this rule allows the intent of Congress (to restore to the estate the value of the property as of the transfer) to best be effected-in any case where the property or the value of the transferred property declines in value post-transfer (so that the valuation rule does not punish the estate and its creditors). However, the circumstances here are different: the value of the transferred property increased substantially post-transfer. To limit the

---

[2] This is separate and apart from actual title (i.e., Ralph Thomas' interest) which Defendants seem to fail to understand.

Trustee to a recovery that is capped at the transfer date value would punish the estate and its creditors by depriving them of the appreciation in value-and allow the bad faith transferees to capture it-on a piece of property that, pursuant to the avoidance judgment, was property of the estate as of the Petition Date. The plain language of § 550(a)(1), Congressional intent, and concerns of equity persuade the Court that this is a circumstance in which value of the transferred property is most properly determined from the date of the judgment for recovery, not from the date of the transfer.

*Seitz*, at 722-23.

Wagener received $80,000 in cash and a $320,000.00 mortgage on Northridge due to Wagener Judgment. The Trustee is entitled to recover, therefore, $400,000.00 from Wagener.

There has been an offer on Northridge for $813,263.00. That is the value of the home which Palladium now owns as a consequence of its actions. Again, Palladium is not entitled to any good faith defenses. Accordingly, the Trustee is entitled to a judgment against Palladium in the amount of $813,263.00.

## CONCLUSION

Based upon the foregoing, there being no genuine issues of material fact, and all the elements of an avoidable claim having been shown, the Trustee respectfully requests that summary judgment be entered against Wagener and Palladium. The Trustee has met his burden of coming forward with evidentiary materials proving all elements of an avoidable transfer under Minn. Stat. 11 U.S.C. §§547(b), 549, and 550.

**WHEREFORE**, the Trustee requests summary judgment in his favor:

1. Avoiding the Transfer of the Debtor's interest in the Property pursuant to 11 U.S.C. §§547 and 549 and preserving the same for the benefit of the estate pursuant to 11 U.S.C. §§550 and 551;

2. Entering judgment avoiding Defendants' interests in Northridge;

3.     Alternatively, awarding a money judgment against Wagener in the amount of $400,000.00 and against Palladium in the amount of $813,263.00; and,

4.     Awarding Trustee his costs and disbursements in this action, and any other or further relief as the Court deems just and equitable.

**LEONARD, O'BRIEN,**
**SPENCER, GALE & SAYRE, LTD.**

Dated: December 22, 2010                    /e/ Matthew R. Burton

By_____
        Matthew R. Burton, #210018
        Attorneys for Plaintiff
        100 South Fifth Street, Suite 2500
        Minneapolis, Minnesota  55402-1234
        (612) 332-1030

431429

21

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                          BKY No. 09-50779

Dennis E. Hecker,

        Debtor.

_____

Randall L. Seaver, Trustee,

        Plaintiff,                                       Adv. No.:  10-5027

vs.

New Buffalo Auto Sales, LLC,
a Minnesota limited liability company,
f/k/a New Buffalo Chrysler, LLC,
Maurice J. Wagener and Palladium Holdings
LLC,

        Defendants.

_____

## AFFIDAVIT OF MATTHEW R. BURTON

STATE OF MINNESOTA    )
                               ) ss.
COUNTY OF HENNEPIN    )

       Your Affiant, being first duly sworn, deposes and states as follows:

       1.      I am counsel for Randall L. Seaver, Chapter 7 Trustee, who is the Plaintiff in this action.

       2.      On or about July 27, 2010, I received the correspondence and attachments which are attached hereto as Exhibit A from Thomas Zappia.  The correspondence contains documents pertinent to this matter.

       FURTHER YOUR AFFIANT SAYETH NOT.

                                  /e/  Matthew R. Burton

Dated:  December 22, 2010        _____

                                  Matthew R. Burton

432152



**Zappia & LeVAHN Ltd.**

July 27, 2010

(Writer's Direct Dial: 763-502-7108)
(Email: tmzappia@zlhlaw.com)

<u>VIA EMAIL</u>

CLARK M. IVERSON
STEVEN H. BERNDT*
THOMAS M. ZAPPIA*
JOEL T. LeVAHN
SUSAN BREID**
ANNE T. BEHRENDT*

Matthew Burton (mburton@losgs.com)

Re:  New Buffalo Chrysler Auto Sales – Hecker Bankruptcy
     Our File No. 24640.001

Dear Matt:

Pursuant to your request, please find the following documents:

PARALEGALS
MARY ANN CHRISTIANS
MEGAN E. MOEN
DAWN M. ODEGARD

1.  Purchase Agreement, dated July 22, 2010
2.  $320,000 Real Estate Mortgage Promissory Note,
    dated July 22, 2010
3.  Mortgage, dated July 22, 2010
4.  Redemption Statement from Hennepin County Sheriff, dated July
    19, 2010
5.  Seller's Closing Statement
6.  Borrower's Closing Statement
7.  Title Insurance Commitment

Please let me know if you will be available to meet this Thursday, July 29, 2010.

1 HILLWIND RD NE
SUITE 301
MINNEAPOLIS, MN
55432
TEL: 763-571-7721
FAX: 763-571-7734

Thanks.

Very truly yours,

ZAPPIA & LeVAHN, LTD.

*Thomas M. Zappia*

Thomas M. Zappia

TMZ/dmo
Attachments
cc:  Maurice J. Wagener (via email)
     Cindy Wagener Robin (via email)
     Greg Wagener (via email)
     Lynn Robson (via email)
     Karl Schmidt (via email)

BA BOARD CERTIFIED
L PROPERTY SPECIALIST
ADMITTED IN WISCONSIN



EXHIBIT
A

# PURCHASE AGREEMENT

THIS AGREEMENT ("Agreement") is made as of the "Effective Date" as that term is defined on the signature pages to this Agreement by and between New Buffalo Auto Sales, LLC, ("Seller"), and Palladium Holdings, LLC ("Buyer").

## R E C I T A L S

(i)    Seller is the holder of a judgment against Dennis E. Hecker ("Hecker"), dated May 4, 2009 ("Hecker Judgment").

(ii)    Hecker was the owner of the property located at 1615 Northridge Drive, Medina, MN, which property is legally described on Exhibit 1 attached to this Agreement (the "Land"), together with: (a) all buildings and improvements constructed or located on the Land ("Buildings") and (b) all easements and rights benefiting or appurtenant to the Land (collectively the Land and Buildings are the "Property").

(iii)    U.S. Bank National Association, ("USB"), subject the rights of redemption and to the requirement of a proceeding subsequent is the current owner of the Property.

(iv)    Because of the Hecker Judgment, Seller has filed a Notice of Intent to Redeem the Property dated June 15, 2010, filed June 23, 2010 as Document No. T4765099.

(v)    Subject to the terms and conditions of this Agreement, Seller has agreed to redeem the Real Property and sell it to Buyer and Buyer has agreed to purchase the Property.

NOW, THEREFORE, in consideration of the covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree, for themselves, their successors and assigns as follows:

1.    <u>Sale of Property</u>.  Seller agrees to sell to Buyer, and Buyer agrees to buy from Seller, the Property.

2.    <u>Purchase Price and Manner of Payment</u>.  The total purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be $618,075.30.00 and shall be payable as follows and allocated in accordance with Exhibit 3 to be attached to this Agreement prior to Closing (defined below):

(a)    $298,075.30 (the "Earnest Money") and $3,794.90 ("Filing Fees") for a total of $301,870.20 to be wire transferred by Buyer to Columbia Title Company, Attn: Timothy Netzell ("Title") on or before 2:00 P.M. local time on July 22, 2010.

The Earnest Money and Filing Fees will be disbursed by Title as follows:

1

      (i)    $218,075.30 to the Sheriff of Hennepin County to redeem the Property on July 22, 2010;

      (ii)    $184.00 to the Hennepin County Registrar of Titles to file the(a) "Deed", (b) "Mortgage" as both are defined below, (c) Sheriffs Certificate of Redemption and (d) Affidavit of Amount Due, etc.;

      (iii)    $2,842.90 to the Hennepin County Registrar of Titles for State Deed Tax;

      (iv)    $768 to the Hennepin County Registrar of Titles Mortgage Registration Tax to file the "Mortgage";

      (v)    $80,000 to the Seller immediately after the Certificate of Redemption, Affidavit, Deed and Mortgage have been filed with Hennepin County Registrar of Titles

(b)    $320,000.00 ("Principal Balance"), by Buyer signing and delivering to Zappia & LeVahn, Ltd. a Promissory Note in the amount of the Principal Balance ("Note"), a mortgage encumbering the Property ("Mortgage") as security for payment of the Note (collectively "Note and Mortgage") in the forms attached to this Agreement as Exhibits 2 and 3.

3.    <u>Contingencies</u>. The obligations of Buyer under this Agreement are non-contingent.

4.    <u>Closing</u>. The closing of the purchase and sale contemplated by this Agreement (the "Closing") shall occur on July 22, 2010 (the "Closing Date", "Date of Closing" or "Closing"). The Closing shall take place at the offices of Title or at such other place as Seller and Buyer may agree.

(a)    <u>Seller's Closing Documents</u>. On the Closing Date, Seller shall execute and/or deliver to Buyer the following (collectively, "Seller's Closing Documents"):

      (i)    <u>Quit Claim Deed</u>. A Quit Claim Deed, in recordable form conveying the Seller's interest in the Property to Buyer, subject to rights of redemption and to the requirement of a proceeding subsequent ("Deed").

      (viii)    <u>FIRPTA Affidavit</u>. A non-foreign affidavit, properly executed and in recordable form, containing such information as is required by IRC Section 1445(b) (2) and its regulations.

      (ix)    <u>IRS Reporting Form</u>. The appropriate Federal Income Tax reporting form, if any is required.

(b)    <u>Buyer's Closing Documents</u>. On the Closing Date, Buyer will execute and/or deliver to Seller the following (collectively, "Buyer's Closing Documents"):

2

      (i)    <u>Earnest Money and Filing Fees</u>. The Earnest Money and Filing Fees shall have been paid by Buyer to Seller and disbursed by Title by wire transfer of immediately available funds pursuant to Section 2(a) above.

      (ii)    <u>Note and Mortgage.</u> The Note and Mortgage in form reasonably satisfactory to Seller shall have been delivered to Seller pursuant to Section 2(b) above.

      (iii)    <u>Insurance Certificate.</u> The insurance Certificate as required under the Mortgage naming Seller as an additional insured and loss payee as required under the Mortgage.

5.    <u>Prorations</u>. Seller and Buyer agree to the following prorations and allocation of costs regarding this Agreement:

    (a)    <u>Title Insurance and Closing Fee</u>. Buyer will pay all costs of the Title Evidence and the fees charged by Title to issue Seller a lender's title insurance policy in the amount of $320,000.00 insuring Buyer's interest in the Property under the Mortgage. Buyer will also pay all premiums required for the issuance of any owner's Title Policy required by Buyer. Buyer will pay any closing fee or charge imposed by any closing agent designated by Title.

    (b)    <u>Recording Costs</u>. Buyer will pay the cost of recording all documents necessary to place record title in the Seller in this Agreement, including the (a) "Deed", (b) "Mortgage" (c) Sheriffs Certificate of Redemption and (d) Affidavit of Amount Due, Buyer will pay the cost of recording all other documents.

    (c)    <u>State Deed Tax.</u> Buyer will pay any State Deed Tax necessary to record the Deed.

    (d)    <u>Mortgage Registration Tax.</u> Buyer will pay the Mortgage Registration Taxes for the Mortgage.

    (e)    <u>Other Costs</u>. All other operating costs of the Property including, but not limited to all delinquent utility charges, if any, will be paid by the Buyer as of the Closing Date.

    (f)    <u>Attorney Fees</u>. Each of the parties will pay its own attorney fees, except that a party defaulting under this Agreement or any closing document shall pay the reasonable attorney fees and court costs incurred by the non-defaulting party to enforce its rights regarding such default.

6.    <u>Real Estate Taxes and Special Assessments</u>. The real estate taxes for the Property due and payable shall be the responsibility of the Buyer. The Buyer agrees to assume on the Date of Closing all installments of levied special assessments for the Property existing as of the Date of Closing.

7.    <u>Title</u>

3

(a)  Seller's Title Evidence.  On or before 2:00 P.M. local time on July 22, 2010, Buyer shall provide the following to Seller:

    (i)  Title Commitment An ALTA 2006 Lender's Policy of Title Insurance commitment including true, correct and legible copies of any instruments referred to in such commitment as constituting exceptions or restrictions upon the title of Seller, except that copies of any liens which are to be released at Closing may be omitted ("Title Commitment"), for a Lender's Policy of Title Insurance in form and content reasonably acceptable to Seller insuring title to the Property, in the amount of $320,000.00 issued by Title. The Title Commitment will commit Title to insure title to the Property subject only to the permitted encumbrances identified on Exhibit 4 attached hereto (the "Permitted Encumbrances") and such other matters reflected in the Commitment that Seller does not raise as title objections. The Title Commitment and the proforma Lender's Title Policy (as defined Below) shall obligate Title to insure Seller's interest as a Lender to the "date of recording at time of recording". Seller shall be allowed 3 hours after receipt of the Title Commitment for the making of any title objections, such objections (which may include Permitted Encumbrances although Seller understands and acknowledges that if Seller elects to proceed despite objecting to any Permitted Encumbrance, the conveyance will be subject to all Permitted Encumbrances) to be made in writing or deemed to be waived. Buyer has represented to Seller that Buyer has received an Owner's Policy of Title Insurance commitment acceptable to Buyer. Further, Buyer acknowledges and agrees that except as expressly set forth in this Agreement, Seller is not making any representations or warranties as to the title to the Property.

    (ii)  Title Evidence. The Title Commitment is referred to as the "Title Evidence."

(b)  Title Policy.  Title will furnish to Seller at Closing a proforma Lender's title policy ("Title Policy") issued by Title pursuant to the Title Commitment, or a suitably marked up Title Commitment initialed by Title Company undertaking to issue such a Title Policy in the form required by the Title Commitment as approved by Seller.

8.  Representations and Warranties by Seller.  Seller represents and warrants to Buyer as follows:

(a)  Authority. Seller has the requisite power and authority to enter into and perform this Agreement and those Seller's Closing Documents signed by it; such documents have been duly authorized by all necessary action on the part of Seller and have been duly executed and delivered; such execution, delivery and performance by Seller of such documents does not conflict with or result in a violation of Seller's organizational documents or any judgment, order, or decree of any court or arbiter to which Seller is a party; such documents are valid and binding obligations of Seller, and are enforceable in accordance with their terms.

4

(b) <u>Title to Property.</u> Seller is redeeming the Property from USB through the Sheriff of Hennepin County, MN and therefore Seller makes no representation or warranty as to the title to the Property.

(c) <u>Rights of Others to Purchase Property.</u> Seller has not entered into any other contracts for the sale of the Property.

(d) <u>FIRPTA.</u> Seller is not a "foreign person", "foreign partnership", "foreign trust" or "foreign estate" as those terms are defined in Section 1445 of the Internal Revenue Code.

(e) <u>Methamphetamine Disclosure.</u> To the best of Seller's knowledge, methamphetamine production has not occurred on the Property.

(f) <u>Airport Zoning.</u> The Property is not affected by airport zoning regulations or, if it is, Buyer may review or obtain a copy of the airport zoning regulations as adopted at the office of the County Recorder for Hennepin County.

(g) <u>Leases.</u> There may be leases, property management contracts, service contracts or similar contracts affecting the Property to which Seller is a not party and which will continue after the Closing Date.

Seller will indemnify and hold Buyer, its successors and assigns, harmless from any expenses or damages, including reasonable attorney fees, which Buyer incurs because of the breach of any of the above representations and warranties. Each of the representations and warranties herein contained shall survive the Closing for a period of one (1) year. Consummation of this Agreement by Buyer with actual knowledge of any breach by Seller will constitute a waiver and release by Buyer of any claims due to such breach.

9. <u>Representations and Warranties by Buyer.</u> Buyer represents and warrants to Seller that Buyer has the requisite powered authority and that Buyer is duly qualified to transact business in the State of Minnesota; that Buyer has the requisite power and authority to enter into this Agreement and Buyer's Closing Documents signed by it; such documents have been duly authorized by all necessary action on the part of Buyer and have been duly executed and delivered; that the execution, delivery and performance by Buyer of such documents do not conflict with or result in violation of Buyer's organizational documents or any judgment, order or decree of any court or arbiter to which Buyer is a party; such documents are valid and binding obligations of Buyer, and are enforceable in accordance with their terms. Buyer will indemnify and hold Seller, its successors and assigns, harmless from any expenses or damages, including reasonable attorney fees, which Seller incurs because of the breach of any of the above representations and warranties for a period of one (1) year. Consummation of this Agreement by Seller with actual knowledge of any such breach by Buyer will constitute a waiver or release by Seller of any claims due to such breach.

10. <u>Broker's Commission.</u> Seller and Buyer represent and warrant to each other that they have

5

dealt with no brokers, realtors, finders or the like in connection with this transaction.

11. <u>Indemnification of Seller by Buyer</u>. Buyer agrees to indemnify Seller against, and hold Seller harmless from, all liabilities, including liabilities under Environmental Laws (including reasonable attorney fees in defending against claims) arising out of the (a) redemption of the Property by Seller and (b) ownership, operation or maintenance of the Property by Buyer. Such rights to indemnification will not arise to the extent that (a) the Seller actually receives insurance proceeds or other cash payments directly attributable to the liability in question (net of the cost of collection, including reasonable attorneys' fees) or (b) the claim for indemnification arises out of an intentionally fraudulent act of Seller. If and to the extent that Seller has insurance coverage, or the right to make claim against any third party for any amount to be indemnified against as set forth above, Seller, upon full performance by the Buyer of its indemnification obligations, assign such rights to Buyer or, if such rights are not assignable, Seller will diligently pursue such rights by appropriate legal action or proceeding and assign the recovery and/or right of recovery to the Buyer to the extent of the indemnification payment made by Buyer.

12. <u>Release of Seller by Buyer</u>. Buyer on its own behalf, and on behalf of its respective officers, members, governors, managers, parents, subsidiaries, predecessors, successors, representatives and assigns, do hereby release, satisfy, and forever discharge Seller and its respective officers, members, governors, managers, parents, subsidiaries, predecessors, successors, representatives and assigns, and each of them, of and from any and all claims, demands, actions, obligations, liabilities, damages, rights of any kind and indebtedness whatsoever, whether fixed or contingent, known or unknown, direct or indirect, (collectively, "Claims") which Buyer has, had, or ever shall have from the beginning of time through the date of this Release, including, but not limited to, Claims arising out of or relating to (a) the redemption of the Property by Seller, (b) the sale of the Property by Seller to Buyer and (c) the ownership, possession or operation of the Property by Buyer.

13. <u>Assignment</u>. Buyer may not assign its rights under this Agreement.

14. <u>"As Is" Sale</u>. Buyer acknowledges, for Buyer and Buyer's successors and assigns, (i) that Buyer has not been given a reasonable opportunity to inspect and investigate the Property and all components of the Property, either independently or through agents and experts of Buyer's choosing because the Property is in the possession of third parties, (ii) Seller has never owned or been in possession of the Property and has only redeemed the Property for the purpose of selling the Property to Buyer under this Agreement and (iii) that Buyer is acquiring the Property based upon Buyer's own investigation and inspection thereof.

SELLER AND BUYER AGREE THAT UPON CLOSING, THE PROPERTY SHALL BE SOLD AND THAT BUYER SHALL ACCEPT POSSESSION OF THE PROPERTY ON THE CLOSING DATE "AS IS, WHERE IS, WITH ALL FAULTS", WITH NO RIGHT OF SET OFF OR REDUCTION IN THE PURCHASE PRICE AND EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF SELLER SET FORTH IN SECTION 8 HEREOF, SUCH SALE SHALL BE WITHOUT REPRESENTATION OR WARRANTY

6

OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, WARRANTY OF INCOME POTENTIAL, USES, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND SELLER HEREBY DISCLAIMS AND RENOUNCES ANY SUCH REPRESENTATION OR WARRANTY. BUYER SPECIFICALLY ACKNOWLEDGES THAT BUYER IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER OR ANY AGENT OR BROKER AS TO THE CONDITION OF OR AS TO ANY MATTER CONCERNING THE PROPERTY (EXCEPT FOR THE WARRANTIES SPECIFICALLY SET FORTH IN THE DEED AND IN SECTION 8 HEREOF), INCLUDING WITHOUT LIMITATION:

(a) THE CONDITION OR SAFETY OF THE PROPERTY OR ANY IMPROVEMENTS THEREON, INCLUDING, BUT NOT LIMITED TO, PLUMBING, SEWER, HEATING AND ELECTRICAL SYSTEMS, ROOFING, AIR CONDITIONING, IF ANY, FOUNDATIONS, SOILS AND GEOLOGY INCLUDING "HAZARDOUS MATERIALS" (AS HEREINABOVE DEFINED), LAND SIZE, OR SUITABILITY OF THE PROPERTY FOR A PARTICULAR PURPOSE;.

(b) WHETHER THE APPLIANCES, IF ANY, PLUMBING OR UTILITIES ARE IN WORKING ORDER;

(c) THE HABITABILITY OR SUITABILITY FOR OCCUPANCY OF ANY STRUCTURE AND THE QUALITY OF ITS CONSTRUCTION;

(d) THE FITNESS OF ANY PERSONAL PROPERTY; OR

(e) WHETHER THE IMPROVEMENTS ARE STRUCTURALLY SOUND, IN GOOD CONDITION, OR IN COMPLIANCE WITH APPLICABLE CITY, COUNTY, STATE OR FEDERAL STATUTES, CODES OR ORDINANCES. SUBJECT ONLY TO THE WARRANTIES HEREIN. ANY REPORTS, REPAIRS OR WORK REQUIRED BY BUYER SHALL BE THE SOLE RESPONSIBILITY OF BUYER, AND BUYER AGREES THAT THERE IS NO OBLIGATION ON THE PART OF SELLER TO MAKE ANY CHANGES, ALTERATIONS, OR REPAIR TO THE PROPERTY. BUYER ACKNOWLEDGES THAT, UPON EXPIRATION OF THE DUE DILIGENCE PERIOD, BUYER HAS COMPLETED ITS DUE DILIGENCE WITH RESPECT TO THE PROPERTY TO ITS SATISFACTION. BUYER IS SOLELY RESPONSIBLE FOR OBTAINING ANY RESALE CERTIFICATE, CERTIFICATE OF OCCUPANCY OR ANY OTHER APPROVAL OR PERMIT NECESSARY FOR TRANSFER OR OCCUPANCY OF THE PROPERTY AND FOR ANY REPAIRS OR ALTERATIONS NECESSARY TO OBTAIN THE SAME, ALL AT BUYER'S SOLE COST AND EXPENSE.

15. Survival. Unless expressly limited in this Agreement, all of the terms of this Agreement will survive and be enforceable after the Closing as provided in this Agreement.

7

16. **Exhibits**. Exhibits to this Agreement are an integral part of this Agreement. All of the Exhibits to be attached shall be so attached on or before the signing of this Agreement and at such time shall become a part of this Agreement.

    A.    <u>List of Exhibits</u>:

        Exhibit 1- Legal description- Property
        Exhibit 2- Promissory Note
        Exhibit 3- Mortgage
        Exhibit 4- Permitted Encumbrances

17. **Notices**. Any notice required or permitted to be given by either party upon the other is given in accordance with this Agreement if delivered personally, or if mailed in a sealed envelope by United States registered or certified mail, return receipt requested, postage prepaid, or if deposited cost paid with a nationally recognized, reputable overnight courier, properly addressed as follows:

**If to Seller:**

New Buffalo Auto Sales, LLC
Attention: Maurice J. Wagener
12520 Wayzata Blvd.
Minnetonka, MN 55305

8

**With a copy to:**

Thomas M. Zappia
941 Hillwind Road NE
Suite 301
Fridley, MN 55432

**If to Buyer:**

Palladium Holdings, LLC
401 S. 1st. St. #1813
Minneapolis, MN 55401

**With a copy to:**

_____

Minneapolis, MN _____

Notices shall be deemed effective on the date of personally delivery, or one business day after deposited with an overnight courier or the earlier of the date of receipt of the registered or certified mail or three business days after deposited in the United States mail. Any party may change its address for the service of notice by giving written notice of such change to the other party, in any manner above specified.

18.    <u>Captions</u>. The paragraph headings or captions appearing in this Agreement are for convenience only, are not a part of this Agreement and are not to be considered in interpreting this Agreement.

19.    <u>Entire Agreement; Modification</u>. This written Agreement constitutes the complete agreement between the parties and supersedes any prior oral or written agreements between the parties regarding the Property. There are no verbal agreements that change this Agreement and no waiver of any of its terms will be effective unless in writing executed by the parties.

20.    <u>Binding Effect</u>. This Agreement binds and benefits the parties and their successors and assigns.

21.    <u>Controlling Law</u>. This Agreement has been made under the laws of the State of Minnesota and such laws will control its interpretation.

22.    <u>Remedies</u>. If Buyer defaults under this Agreement, Seller shall have the right to terminate this Agreement after written notice of cancellation as provided in Minnesota Statutes Section

9

559.21. Upon such termination Seller will retain the Earnest Money as its sole and liquidated damages, time being of the essence. Seller and Buyer agree that Seller's economic detriment resulting from the removal of the Property from the market and the carrying and other costs incurred thereafter and associated therewith, are impracticable or extremely difficult to ascertain, and that the Earnest Money is a reasonable estimate of such damages in the event of Buyer's failure to perform according to the provisions of this Agreement. Such payment is intended to be liquidated damages and not intended to be a penalty. If Seller defaults under this Agreement, Buyer shall have the right to terminate this Agreement by giving written notice of termination to Seller, whereupon this Agreement will terminate and upon such termination, all Earnest Money shall be refunded to Buyer. In addition to termination of this Agreement, Buyer may bring an action against Seller for damages or an action for specific performance of this Agreement; provided that such action specific performance must be commenced by the Buyer against the Seller within six (6) months following the Date of Closing.

23. <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

24. <u>Right to Independent Counsel.</u>  Each of the parties has been represented by independent counsel in connection with this Agreement or has knowingly and voluntarily decided not to be represented by independent counsel. Each of the parties represents that this Agreement has been read and understood and that each have received a copy.

25. <u>Mutual Drafting.</u>  This Agreement is the mutual product of the parties and each provision hereof has been subject to the mutual consultation, negotiation and agreement of each of the parties, and shall not be construed for or against any party to this Agreement.

26. <u>Further Assurances.</u>  At any time and from time-to-time after the signing and delivery of this Agreement, each party shall upon the reasonable request of another party, sign, acknowledge and deliver all such further and other assurances and documents, and will take such actions consistent with the terms of this Agreement, as may be reasonably requested to carry out the transactions contemplated by this Agreement and to permit each party to enjoy its rights and benefits under this Agreement.

27. <u>Absence of Third Party Rights.</u>  No provision of this Agreement is intended, nor is any provision to be interpreted to provide or create any third party beneficiary rights or any other rights of any kind in any client, customer, affiliate, shareholder, employee or partner of any party to this Agreement or any other person or entity.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

10

SIGNATURE PAGE TO PURCHASE AGREEMENT BETWEEN NEW BUFFALO AUTO
SALES, LLC AS SELLER AND PALLADIUM HOLDINGS, LLC AS SELLER.

**SELLER:**

NEW BUFFALO AUTO SALES, LLC

Dated: July 22 , 2010          By: _____

                              Maurice J. Wagener
                              Its:    Chief Manager

[EFFECTIVE DATE OF THIS AGREEMENT SHALL BE THE DATE ON THE LATER OF
WHICH IS SIGNED BY THE SELLER OR BUYER]

11

SIGNATURE PAGE TO PURCHASE AGREEMENT BETWEEN NEW BUFFALO AUTO SALES, LLC AS SELLER AND PALLADIUM HOLDINGS, LLC AS SELLER.

**BUYER:**

**PALLADIUM HOLDINGS, LLC**

Dated: _July 21st_, 2010    By: _[signature]_

Its: _Chief Manager_

[EFFECTIVE DATE OF THIS AGREEMENT SHALL BE THE DATE ON THE LATER OF WHICH IS SIGNED BY THE SELLER OR BUYER]

**EXHIBIT 1**

<u>LEGAL DESCRIPTION</u>

Lot 15, Block 3, North Ridge Farm, together with the appurtenant easement(s) contained in Document No. 5004854, according to the recorded plat thereof, and ,situate in Hennepin County, Minnesota.

**EXHIBIT 2**

<u>PROMISSORY NOTE</u>

14

**EXHIBIT 3**

<u>MORTGAGE</u>

15

**EXHIBIT 4**

**PERMITTED ENCUMBRANCES**

1.  Consumer Mortgage (Junior Lien) dated August 5, 1999, filed November 10, 1999, as Document No. 3223971, executed by Dennis E. Hecker, a single person, to Firstar Bank U.S.A., N.A., in the original principal amount of $250,000.00.

    Assigned to U.S. Bank National Association, a national banking association, by Assignment of Mortgage, dated November 19, 2004, filed September 14, 2005, as Document No. 4161898.

    Amended by Amendment to Mortgage dated November 19, 2004, filed September 14, 2005, as Document No. 4161899.

    Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage dated November 12, 2009, filed November 17, 2009, as Document No. T4704494.

    Sheriff's Certificate of Sale in favor of U.S. Bank National Association, dated January 19, 2010, filed with accompanying foreclosure record on January 19, 2010, as Document No. T4721940. The time allowed by law for redemption by the mortgagor, his personal representatives or assigns, is six months from the date of sale, which was January 19, 2010.

    Notice of Intention to Redeem by New Buffalo Auto Sales, LLC, a Minnesota limited liability company, dated June 15, 2010, filed June 23, 2010, as Document No. T4765099.

    Notice of Intention to Redeem by Palladium Holdings LLC, dated July 7, 2010, filed July 8, 2010, as Document No. T4768581.

2.  Any lien for common expenses arising under the provisions of the Declaration of Covenants, Conditions and Restrictions of North Ridge Farm, dated May 16, 1985, filed June 13, 1985, as Document No. 5004854 (Abstract) and as Document No. 1651379 (Torrens), as amended.

3.  Mortgage dated November 20, 2001, filed December 17, 2001, as Document No. 3473642, executed by Dennis E. Hecker and Tamitha D. Hecker, husband and wife, to Mortgage Electronic Registration Systems, Inc., a Delaware corporation, as nominee for GMAC Mortgage Corporation, a Pennsylvania corporation, in the original principal amount of $650,000.00.

4.  Mortgage dated November 20, 2001, filed December 17, 2001, as Document No. 3473643, executed by Dennis E. Hecker and Tamitha D. Hecker, husband and wife, to Mortgage Electronic Registration Systems, Inc., a Delaware corporation, as nominee for GMAC Mortgage Corporation, a Pennsylvania corporation, in the original principal amount of $250,000.00.

16

5. Federal Tax Lien against Dennis E. Hecker and Tamitha D. Hecker, dated April 8, 2009, filed April 22, 2009, as Document No. A9348403, in the amount of $2,612,791.87. IRS Serial Number is 533654109.

6. Judgment against Dennis E. Hecker, dated May 7, 2009, docketed May 7, 2009, in Court File No. 27-CV-09-2692, and filed April 20, 2010, as Document No. T4747121, in the amount of $324,938.72, in favor of New Buffalo Auto Sales, LLC, a Minnesota limited liability company, fka New Buffalo Chrysler, LLC, and Maurice J. Wagener.

7. Judgment against Dennis Hecker, dated January 27, 2009, docketed April 29, 2009, in Court File No. 27-CV-08-25766, and filed April 22, 2010, as Document No. T4747638, in the amount of $813.67, in favor of Koch Group Mpls LLC, David Koch, Scott Kotaska and Tara Cain.

8. The interest of Koch Group Mpls LLC has been assigned to Palladium Holdings, LLC, by Assignment of Judgment dated May 27, 2010, filed July 8, 2010, as Document No. T4768580.

9. Judgment against Dennis E. Hecker, dated April 28, 2009, docketed April 28, 2009, in Court File No. 27-CV-09-2152, in the amount of $476,925,874.60, in favor of Chrysler Financial Services Americas LLC.

   NOTE: The above is not currently memorialized upon the Certificate of Title.

10. Judgment against Dennis E. Hecker, dated May 18, 2009, docketed June 5, 2009, in Court File No. 27-CV-09-3719, in the amount of $3,044,046.00, in favor of JPMorgan Chase Bank NA.

   NOTE: The above is not currently memorialized upon the Certificate of Title.

11. Judgment against Dennis E. Hecker, dated May 26, 2009, docketed July 7, 2009, in Court File No. 27-CV-09-8670, in the amount of $4,171,448.17, in favor of Bankfirst.

   NOTE: The above is not currently memorialized upon the Certificate of Title.

12. Easements for utilities and drainage as shown on the recorded plat of North Ridge Farm.

13. Subject to a Declaration of Covenants, Conditions, Restrictions, Charges and Liens as contained in Document No. 5004854, as shown by recital on the Certificate of Title, Document No. 5004854 has been amended by Amendment to Declaration of North Ridge Farm dated January 23, 2006, filed May 7, 2007, as Document No. 4383786.

17

# REAL ESTATE MORTGAGE
## PROMISSORY NOTE

Date: July 22, 2010

$320,000.00

Minneapolis, Minnesota

**FOR VALUE RECEIVED** Palladium Holdings LLC ("Borrower") promise to pay to the order of New Buffalo Auto Sales, LLC ("Lender") at 12520 Wayzata Blvd. Minnetonka, MN 55305 or such other place as the holder hereof (hereinafter referred to as Lender or "Holder") may from time to time in writing designate, in lawful money of the United States of America, the principal sum of Three Hundred Twenty Thousand and No/100ths Dollars ($320,000.00), together with interest on the outstanding unpaid principal balance (the "Principal Balance") of this Real Estate Mortgage Promissory Note (the "Note") from the date hereof until paid at the rate provided herein.

### A. CALCULATION OF INTEREST:

1. The Principal Balance shall bear interest from the date of this Note at an annual rate of six percent (6%) ("Interest").

### B. PAYMENT OF PRINCIPAL AND INTEREST:

1. The Principal Balance and accrued Interest shall be paid in monthly installments of Interest only commencing on September 1, 2010 and on the first day of each month thereafter through January, 31 2010.

2. On February 1, 2011, the entire Principal Balance and all accrued and unpaid Interest shall be fully due and payable.

### C. ADDITIONAL TERMS AND CONDITIONS:

1. This Note may be prepaid at any time, in whole or in part. Prepayment of this Note shall be applied in the inverse order of its maturity unless otherwise agreed to in writing by the parties.

2. This Note is secured by a Mortgage of even date herewith between Lender and Borrower ("Collateral Document")

3. Each maker, endorser, guarantor or surety of this Note waives presentment, demand, dishonor, notice of dishonor, protest and notice of protest, and agrees that the holder hereof may extend the times of payments of Interest and/or principal of this Note and may release all or any of the collateral for this Note, one or more times, without notice to or consent of any party liable hereon and without releasing any such party.

4. As part of this transaction, Borrower has specifically agreed that this Note shall be governed by and interpreted in accordance with the laws of the State of Minnesota.

5. This Note may not be amended, modified or changed, nor shall any waiver of any provisions of this Note be effective, except only by an instrument in writing and signed by the party against whom enforcement of any waiver, amendments, change, modification or discharge is sought.

D. **EVENTS OF DEFAULT**: The occurrence of any of the following shall be considered an Event of Default under this Note:

1. Time is of the essence of this Note. The failure of Borrower to pay any payment under the Note when due.

2. The occurrence of an event of default under the Collateral Document.

3. If any action or proceeding is commenced by or against Borrower under Federal Bankruptcy Law, or under any other present or future state or federal law for the relief of debtors or for appointment of receiver or trustee for Borrower or any substantial part of Borrower's assets or Borrower admits, in writing, its inability to pay debts generally as they become due; provided that, in the case such actions or proceedings against Borrower are dismissed within forty-five (45) days, then the event of default shall be deemed cured.

E. **REMEDIES**: Upon the occurrence of an Event of Default as defined herein, the Holder shall have the rights as follows:

1. The Holder shall have the right to declare, without further notice, the Principal Balance and all accrued and unpaid Interest thereon to be immediately due and payable, and the same shall thereupon be immediately due and payable without notice or demand. The failure to exercise such option at any time shall not constitute a waiver of the right to exercise the same at any subsequent time.

2. If this Note is referred to an attorney at law for collection, Borrower agrees to pay all costs of collection, including reasonable attorneys' fees regardless of whether an action is commenced to collect under this Note.

3. Borrower acknowledges that late payment by Borrower of any sums due under this Note will cause the Lender to incur costs not otherwise contemplated, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges. Accordingly, if any installment, payment or any other sum due from Borrower to Lender shall not be received by Lender or Lender's designee within ten (10) days after such amount shall be due, Borrower shall pay to Lender a late charge equal to five (5%) percent of such overdue amount; provided, however, that Borrower shall be entitled to written notice and a five (5) day right to cure on the first occasion

2

during any twelve (12) month period that the late charge would apply. The parties agree that such a late charge represents a fair and reasonable estimate of the costs Lender will incur by reason of the late payment by Borrower.

4.  The rights or remedies of the Holder as provided in this Note or the Collateral Document or other documents shall be cumulative and concurrent and may be pursued singly, successively, or together against any Borrower, any collateral and any other funds, property or security held by the Holder for the payment of the indebtedness due under this Note. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release of such rights or remedies or the right to exercise them at any later time.

BORROWER:

PALLADIUM HOLDINGS LLC,
a Minnesota limited liability company

By: _____
    Joseph Turecko
Its: Chief Manager

3

# MORTGAGE

This Mortgage ("Mortgage"), made effective as of July 22, 2010, by Palladium Holdings LLC, a Minnesota limited liability company, ("Mortgagor") and New Buffalo Auto Sales, LLC, a Minnesota limited liability company (,"Mortgagee").

WITNESSETH, THAT, in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration to it in hand paid by the Mortgagee, the receipt whereof is hereby acknowledged, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, jointly with rights of survivorship, forever: (a) the land in the County of Hennepin, State of Minnesota, described on Exhibit "A", attached hereto and made a part hereof (hereafter sometimes called the "Land"); (b) all of the buildings, structures, and other improvements now standing or at any time hereafter constructed or placed upon the Land (hereafter sometimes called the "Improvements"); (c) all extensions, additions, improvements, betterments, renewals, and replacements of any of the foregoing, together with the benefit of any deposits or payments now or hereafter made by Mortgagor or on its behalf; and (d) all hereditaments, easements, rights, privileges and appurtenances now or hereafter belonging, attached, or in any way pertaining to the Land or to any of the Improvements (all of the foregoing are hereafter referred to as the "Mortgaged Property"); .

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee forever;

PROVIDED, NEVERTHELESS, that if the Mortgagor shall pay to the Mortgagee, its successors or assigns, the principal sum of Three Hundred Twenty Thousand and No/100ths Dollars ($320,000.00) Dollars, with interest at the rate provided in that certain Real Estate Mortgage Promissory Note of even date herewith (the "Note"), all of the terms of which are hereby made a part of this Mortgage to the same extent and with the same effect as if they were fully set forth herein, and shall also pay all other sums, with interest thereon, as may be advanced by Mortgagee, in accordance with this Mortgage to protect the lien of this Mortgage or for any other purpose, and shall also keep and perform all and singular the covenants contained herein and in the Note, to be kept and performed by the Mortgagor, then this Mortgage shall be null and void, in which event Mortgagee will execute and deliver to Mortgagor, in form suitable for recording, a full release and satisfaction of this Mortgage; otherwise, this Mortgage shall remain in full force and effect. The indebtedness evidenced by the sums payable under the Note are referred to as the "Indebtedness". The balance of

- 1 -

the principal sum of the Note together with interest thereon shall be due and payable in full on February 1, 2011. The Mortgagor represents, warrants and covenants to the Mortgagee that it is lawfully seized of the Mortgaged Property in fee simple unless otherwise expressly limited and has the right and lawful authority to mortgage the same as provided herein; and that the Mortgagor will warrant and defend the title to the Mortgaged Property against all claims and demands whatsoever not specifically excepted herein.

1. **COVENANTS OF THE MORTGAGOR.** The Mortgagor further covenants and agrees as follows:

1.1 **Payment of Indebtedness and Interest.** Mortgagor shall pay the principal and interest due on the Note in accordance with terms of the Note, and shall pay all other Indebtedness as and when due and payable. Unless otherwise agreed in writing by Mortgagee, all such other Indebtedness, shall be immediately due and payable without demand. The provisions of the Note are hereby incorporated by reference into this Mortgage as fully as if set forth herein.

1.2 **Taxes.** Subject to paragraph 1.4 below, Mortgagor will pay when due and before penalty or interest attaches because of delinquency and payment, all taxes, installments of assessments, water charges, sewer charges and other fees, taxes, charges and assessments of every kind or nature whatsoever assessed or charged against or constituting a lien on the Mortgaged Property or any interest therein or the Indebtedness (hereinafter collectively referred to as the "Taxes") and will upon demand furnish to Mortgagee proof of payment of any such Taxes.

1.3 **Insurance.** Subject to paragraph 1.4 below, Mortgagor will maintain insurance ("Insurance") as follows:

1.3.1 Mortgagor shall keep the buildings, structures and other improvements now existing or hereafter erected or placed on the Mortgaged Property insured against loss by fire, perils of extended coverage, and such other hazards, casualties, and contingencies as required by Mortgagee for full replacement cost without deduction for depreciation. Such policy shall include "all risk" coverage, contain a standard Mortgagee clause in favor of Mortgagee and shall be reasonably satisfactory in form and substance to Mortgagee.

1.3.2 Mortgagor shall maintain comprehensive general liability insurance naming Mortgagee as an additional insured in an amount of Two Million ($2,000,000) Dollars insuring against claims arising from any accident or occurrence in or upon the Mortgaged Property.

1.3.3 All Insurance described in this paragraph shall be carried with admitted insurance companies licensed to do business in the State of Minnesota approved by Mortgagee in Mortgagee's reasonable discretion, and the policies and renewals thereof shall contain an agreement of the insurer that the coverage shall not be

terminated or modified without thirty (30) days prior written notice to Mortgagee.

1.3.4  In the event of loss, Mortgagor will give immediate notice by mail to Mortgagee, who may make proof of loss if not made by Mortgagor within thirty (30) days of written demand by Mortgagee.

1.3.5  In the event of foreclosure of this Mortgage, all right, title, and interest of Mortgagor in and to any insurance policies then in force and proceeds of insurance not yet paid for loss or damage shall pass to the purchaser at the foreclosure sale up to the outstanding amount of the Indebtedness and the balance, if any, shall be paid to the Mortgagor.

1.4     **Tax and Insurance Escrows.**  To ensure prompt payment of all property taxes, assessments, and insurance premiums with respect to the Mortgaged Property, Mortgagee may, at its option, upon the occurrence of a monetary Event of Default, require and Mortgagor agrees to pay each month, at the same time as the payments are due under the Note, the sum required by Mortgagee for a property tax and assessment escrow and insurance escrow, which sum shall be an amount estimated by Mortgagee to be sufficient to pay as due all such property taxes and insurance premiums. The amounts so paid shall be held and applied by Mortgagee to the payment of such property taxes, assessments and insurance premiums and no interest shall be paid thereon by Mortgagee (hereinafter collectively referred to as the **"Charges"**) in an amount equal to:

1.4.1 One-twelfth (1/12th) of the annual Taxes next to become due on the Mortgaged Property; provided that, with the first such deposit, there shall be deposited in an addition an amount as estimated by Mortgagee which, when added to monthly deposits to be made thereafter as provided herein, shall assure to the Mortgagee's satisfaction that there will be sufficient funds on deposit to pay the Taxes as they become due;

1.4.2  One-twelfth (1/12th) of the annual premiums on each policy of Insurance required to be maintained hereunder, provided that with the first such deposit there shall be deposited, in addition, an amount equal to one-twelfth (1/12th) of such annual insurance premiums multiplied by the number of months elapsed between the dates premiums on each policy were last paid to and including the date of deposit;

1.4.3  provided that the amount of such deposit shall be based upon Mortgagee's estimate as to the amount of Taxes and premiums of Insurance next to be payable and may require that the full amount of such payment will be available to Mortgagee at least one (1) month in advance of the due date;

1.4.4  Mortgagee will, upon timely presentation to Mortgagee by Mortgagor of the bills therefore, pay the Charges from such deposits. Mortgagor agrees to cooperate and assist in obtaining tax bills when requested by Mortgagee;

Page 24

1.4.5  In the event that the deposits on hand shall not be sufficient to pay all of the estimated Charges when the same shall become due from time to time, or the prior deposit shall be less than the currently estimated monthly amounts, then Mortgagor shall immediately pay to Mortgagee on demand any amount necessary to make up the deficiency.  The excess of any such deposits shall be credited toward subsequent Charges; and

1.4.6  If a default shall occur under the terms of this Mortgage, Mortgagee may, at its option, without being required so to do, apply any deposits on hand to the payment of Charges whether then due or not to the Indebtedness, in such order and manner as Mortgagee may elect.  When the Indebtedness has been fully paid, any remaining deposit shall be returned to Mortgagor as its interest may appear.  All deposits are hereby pledged as additional security for the Indebtedness and shall be held for the purposes for which made as herein provided, may be held by Mortgagee, shall be held without allowance of interest thereon and without fiduciary responsibility on the part of the Mortgagee or its agents and shall not be subject to the direction or control of the Mortgagor.  Mortgagee shall not be liable for any act or omission made and taken in good faith.  In making any payments, Mortgagee may rely on any statement, bill or estimate procured from or issued by the payee without inquiry into the validity or accuracy of the same.

1.5  Liens.  Mortgagor will keep the Mortgaged Property free from all senior liens, encumbrances, and security interests of every nature heretofore or hereafter arising.  Mortgagor shall pay when due the claims of all persons supplying labor or materials to or in connection with the Mortgaged Property.

1.6  Care of Property.  Mortgagor shall or shall cause its tenants to (a) maintain the Mortgaged Property in as good repair and condition as at the date of this Mortgage, ordinary depreciation excepted, (b) commit or permit no waste, (c) upon damage to or destruction of the Mortgaged Property or any part thereof by fire or other casualty, restore, replace or rebuild the Mortgaged Property to the condition it was in immediately prior to such damage or destruction, and (d) not remove or permit removal of any buildings, structures, or other improvements or fixtures of any kind from the Land nor do any act that would impair or lessen the value of the Mortgaged Property without the prior written consent of Mortgagee.

1.7  Intentionally Omitted.

1.8  Compliance with Laws.  Mortgagor shall comply with all present and future laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property or the operation thereof, including all environmental laws, and shall pay all fees or charges of any kind in connection therewith.

1.9  Hazardous Substances.  Mortgagor has no knowledge nor has Mortgagor engaged in nor does Mortgagor intend on engaging in any activity by which Mortgagor should have reasonably known that there is a Hazardous Substance as defined in Minnesota Statutes,

- 4 -

Section 115B.01, et seq., the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, 42 U.S.C. Sec. 9601, et seq., Hazardous Materials Transportation Act, 42 U.S.C. Sec. 6901, et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., located in or on the Mortgaged Property, or any facility as defined in Minnesota Statutes, Section 115.02, Subd. 5, excluding any Hazardous Substance left on the Mortgaged Property by the Mortgagee as of the date hereof. The Mortgagor, its successors and assigns, makes the following representations and warranties:

    1.9.1 Mortgagor will not engage in the business of generating, transporting, storing, treating, or disposing of a hazardous substance at the Mortgaged Property in violation of applicable laws or disposing of waste at the Mortgaged Property or knowingly permit others to engage in such a business at the Mortgaged Property;

    1.9.2 Mortgagor will not knowingly permit any person to make regular use of the Mortgaged Property for disposal of waste;

    1.9.3 Mortgagor will not knowingly permit any person to use the Mortgaged Property for disposal of a hazardous substance in violation of applicable laws; and

    1.9.4 Mortgagor shall immediately, upon receipt, provide Mortgagee with copies of all permits, inspection reports, monitoring reports, licenses, orders, demands, compliance requests, edicts, or other documentation filed, served, delivered or transmitted either with, to or from the Minnesota Pollution Control Agency or the Environmental Protection Agency (or any successor organization, or any other governmental body, hereafter "Environmental Requirements"). Mortgagor further agrees to comply with all Environmental Requirements and to cause Mortgagor's tenants to so comply.

1.10   **Condemnation.** Mortgagor hereby irrevocably assigns to Mortgagee any award or other payment for any damage to, or taking or acquisition of all of the Mortgaged Property (a "Taking"), either temporarily or permanently, in any condemnation proceeding, or by exercise of the right of eminent domain, to the extent of the full amount of the remaining unpaid Indebtedness, and hereby empowers Mortgagee to collect and receive the same and to give proper receipts therefor in the name of Mortgagor, and the same shall be paid forthwith to Mortgagee, who at its option may release any such award or monies so received to Mortgagor or apply the same, in whole or in part to payment of the Indebtedness, and if the proceeds are not sufficient to pay the entire Indebtedness, then to reduction of the Indebtedness by applying to installments in the inverse order of their maturity, without any prepayment fee; provided, however, that in such case, Mortgagor shall have the option to have the principal balance then due and owing, to be re-amortized over the then remaining time used in the original amortization schedule. If a partial Taking occurs, Mortgagor shall use any award received in connection therewith for restoration of the Mortgaged Property and the remaining balance of the award, if any, shall be paid to Mortgagee as a prepayment of the Indebtedness consistent with the preceding provisions of this paragraph. Mortgagor shall proceed, with reasonable diligence, to demolish and remove any ruins or complete repair or

restoration of the Mortgaged Property as nearly as possible to its former condition, type and character immediately prior to the Taking, whether or not the awards payable as a result of the Taking are available or adequate to complete such repair or restoration.

1.11 **Indemnification by Mortgagor.** Except for matters arising before the date hereof, Mortgagor will protect, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, attorneys' fees and expenses) imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of the Mortgaged Property, or any interest therein, or receipt of any rent or other sum therefrom, (b) any accident, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, and parking area, if any, (c) any use, non-use or condition of the Mortgaged Property or any part thereof or the adjoining sidewalks, curbs, and parking area, if any, (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage, (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof, (f) any negligence or tortious act on the part of Mortgagor or any of its agents, contractors, sublessees, licensees or invitees, or (g) exercise by Mortgagee of any remedy provided hereunder or at law or equity; provided, however, that nothing herein shall be construed to obligate Mortgagor to protect, indemnify and save Mortgagee harmless from and against liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, attorneys' fees and expenses) imposed upon or incurred by Mortgagee by reason of the negligence or tortious acts on the part of Mortgagee or any of its employees, agents, contractors, licensees or invitees.

1.12 **Due on Transfer.** No interest in the legal or equitable title or both legal and equitable title to all or any portion of the Mortgaged Property shall be sold, assigned, transferred, conveyed or mortgaged, voluntarily or involuntarily ("Property Transfer"), without the prior written consent of the Mortgagee. Mortgagee's consent to a Property Transfer shall not operate as a release of the liability of Mortgagor under the Note.

1.13 **Right of Mortgagee to Perform.** If Mortgagor fails to pay any or all Taxes hereafter becoming due and payable against the Mortgaged Property or fails to obtain the release of any lien or encumbrance of any nature hereafter arising upon the Mortgaged Property or fails to perform any other covenants and agreements contained in this Mortgage or the Note or if any action or proceeding is commenced which adversely affects or questions the title to or possession of the Mortgaged Property or the interest of the Mortgagor or Mortgagee therein, then Mortgagee, at its option, with at least ten (10) days prior written notice to Mortgagor, may perform such covenants and agreements, investigate and defend against such action or proceeding, and take such other action as the Mortgagee deems necessary to protect the Mortgagee's interest. Any amounts disbursed by the Mortgagee pursuant to this paragraph, including court costs and expenses and attorneys' fees, shall become additional Indebtedness of Mortgagor secured by this Mortgage, with interest accruing at the rate provided in the Note.

1.14    **Right of Mortgagee to Enter.** Mortgagor will upon reasonable advance written notice permit Mortgagee and its agents to enter and to authorize others to enter upon any or all of the Mortgaged Property, at any time and from time to time, to inspect the same, to perform or observe any covenants, conditions, or terms which Mortgagor shall fail to perform, meet, or comply with, or for any other purpose in connection with the protection or preservation of Mortgagee's security, without thereby becoming liable to Mortgagor or any person in possession under Mortgagor, provided, however, that Mortgagee shall use its commercially reasonable efforts not to disturb the use or occupancy of the Mortgaged Property in connection therewith. Mortgagee is under no obligation to exercise the rights permitted by this section.

2.    **DEFAULT.**

2.1    **Event of Default Defined.** Each of the following occurrences shall constitute an Event of Default hereunder ("**Event of Default**"):

2.1.1  The occurrence of any Event of Default under the Note.

2.1.2  The Mortgagor shall fail to duly perform or observe any of the covenants contained in this Mortgage within ten (10) days after delivery of written notice of such default or if the default reasonably requires more than ten (10) days to cure, Mortgagor has not commenced action to cure the default within ten (10) days after delivery of such notice and thereafter does not promptly and continuously work to cure such default.

2.1.3  The appointment pursuant to an order of a court of competent jurisdiction, of a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of Mortgagor or any termination or voluntary suspension of the transaction of business of Mortgagor, or any attachment, execution or other judicial seizure of all or any substantial portion of Mortgagor's assets which attachment, execution or seizure is not discharged within forty-five (45) days.

2.1.4  The dissolution or termination of existence of Mortgagor, voluntary or involuntary.

2.2    **Remedies.** Upon the occurrence of an Event of Default or at any time thereafter until such Event of Default is cured, Mortgagee may, at its option, exercise any or all of the following rights and remedies (and any other rights and remedies now or then available to it, either hereunder or at law or in equity):

2.2.1  Mortgagee may, with notice as required in the Note, declare all Indebtedness secured by this Mortgage immediately due and payable, and the same shall thereupon be immediately due and payable;

2.2.2  Mortgagee may foreclose this Mortgage by action or advertisement. Mortgagor

hereby authorizes the Mortgagee to do so, power being herein expressly granted to sell the Mortgaged Property at public auction without any prior hearing or notice thereof and to convey the same to the purchaser, in fee simple, pursuant to the statutes of Minnesota in such case made and provided and out of the proceeds arising from such sale, to pay all Indebtedness secured hereby with interest, and all legal costs and charges of such foreclosure and the maximum attorneys' fees permitted by law, which costs, charges and fees the Mortgagor agrees to pay; and

2.2.3 Except as otherwise prohibited by applicable law, if (a) this Mortgage or any other Loan Document is delivered to any attorney for the purpose of enforcing the obligations thereunder through any legal proceeding; or (b) an attorney is retained to represent Mortgagee in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under any of the Loan Documents, Mortgagor shall pay to Mortgagee all reasonable attorneys' fees and costs, including without limitation, fees and costs incurred in litigation, mediation, arbitration, administrative and bankruptcy proceedings and appeals therefrom, court costs, filing fees, recording costs, expenses for telephone calls and facsimile transmissions, travel expenses, photocopies, expenses of sale of foreclosure, title insurance premiums, accountant's fees, appraisal fees, environmental investigation costs, and all other costs and expenses incurred in connection therewith, in addition to all other amounts due hereunder. Such costs shall be paid Mortgagee whether or not an action is actually commenced against Mortgagor by reason of any breach of any of the Loan Documents.

3.    **MISCELLANEOUS.**

3.1    **No Implied Waiver.** Any delay by Mortgagee in exercising or any failure by the Mortgagee to exercise any right or remedy hereunder, or afforded by law shall not be a waiver of or preclude the exercise of any right or remedy hereunder, whether on such occasion or any future occasion.

3.2    **Remedies Cumulative.** Each remedy of Mortgagee is distinct and cumulative to each other right or remedy under this Mortgage or afforded by law and may be exercised concurrently or independently. Foreclosure of the Mortgage will not affect or limit any right or remedy of Mortgagee on account of any breach by Mortgagor of the terms of this Mortgage occurring prior to such foreclosure.

3.3    **Severability and Survival.** The unenforceability or invalidity of any provision or provisions of this Mortgage as to any persons or circumstances shall not render that provision or those provisions unenforceable or invalid as to any other persons or circumstances, and all provisions hereof, in all other respects, shall remain valid and enforceable.

3.4    **Survival of Covenants.** Foreclosure of this Mortgage will not affect or limit any right or remedy of Mortgagee on account of any breach by Mortgagor of the terms of this Mortgage occurring prior to such foreclosure except to the extent of the amount

bid at foreclosure.

3.5 <u>WAIVER OF JURY TRIAL</u>. THE MORTGAGOR ACKNOWLEDGES THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED AND THAT THE TIME AND EXPENSE REQUIRED FOR TRIAL BY A JURY MAY EXCEED THE TIME AND EXPENSE REQUIRED FOR TRIAL WITHOUT A JURY. THE MORTGAGOR, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF MORTGAGOR'S CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF MORTGAGEE AND MORTGAGOR, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS MORTGAGE, ANY RELATED AGREEMENTS, OR THE OBLIGATIONS. THE MORTGAGOR HAS READ ALL OF THIS MORTGAGE AND UNDERSTANDS ALL OF THE PROVISIONS OF THIS MORTGAGE. THE MORTGAGOR ALSO AGREES THAT COMPLIANCE BY THE MORTGAGEE WITH THE EXPRESS PROVISIONS OF THIS MORTGAGE SHALL CONSTITUTE GOOD FAITH AND SHALL BE CONSIDERED REASONABLE FOR ALL PURPOSES.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage effective as of the day and year first above written.

MORTGAGOR:

PALLADIUM HOLDINGS, LLC

By: _____
Joseph Yurecko, Its: Chief Manager

STATE OF MINNESOTA  )
                    ) ss.
COUNTY OF HENNEPIN  )

The foregoing instrument was acknowledged before me this 22 day of July, 2010, by Joseph Yurecko, Chief Manager of Palladium Holdings LLC, Mortgagor.

Notary Public

TIMOTHY A. NETZELL
Notary Public
State of Minnesota
My Commission Expires
January 31, 2015

THIS INSTRUMENT WAS DRAFTED BY:

Zappia & LeVahn, Ltd (TMZ)
941 Hillwind Rd., Suite 301
Minneapolis, MN 55432
(763) 571-7721

SEND TAX STATEMENTS TO:

PALLADIUM HOLDINGS, LLC

_____

Attn: Joseph Yureck

**EXHIBIT A**
Real Property Legal Description



# Hennepin County Sheriff's Office
Accounting Division
350 South Fifth Street, Room 30
Minneapolis, MN 55415-1369

**Date:** July 19, 2010

**To:** Anne Behrendt - Zappia & LeVahn
email: atbehrendt@zlhlaw.com

**Contact:**

| Todd Connors | Bev Lowe |
|---|---|
| 612-348-6198 | 612-348-6195 |

**No. of Pages:** 1

The redemption amount below is calculated for     <u>July 22, 2010</u> .

NOTE: It is the responsibility of the redeeming party to pay the actual amount owed as stated in Minnesota Statute 580.23, Subd. 1. If an error in the calculations below is discovered, the redemption amount will be revised and additional funds may be required or refunded.

| | |
|---|---|
| Original Mortgagor: | Dennis E. Hecker |
| Certificate of Sale: | U.S. Bank National Association |
| Street Address: | 1615 Northridge Dr, Medina |
| Legal Description: | Lot 15, block 3, North Ridge Farm |
| Foreclosure Sale Date: | 01/19/10 |
| Redemption Date: | 07/22/10 |

| | | |
|---|---|---|
| Bid at Sale | $ | 213,263.00 |
| Interest on Bid | $ | 3,494.01 |
| Affidavit | $ | 1,267.50 |
| Interest | $ | 0.79 |
| Subtotal | $ | 218,025.30 |
| Sheriff's Redemption Fee | $ | 50.00 |
| Total Redemption Amount | $ | 218,075.30 |

An original affidavit of amount due and owing on the creditor's lien must be received in our office the same day as redemption funds.

## IMPORTANT

<u>WITHOUT EXCEPTION, the funds must be in the form of a local cashier's or certified check made payable to Hennepin County Sheriff</u> and delivered to our office, Room 30 Courthouse, between 9:00 AM and 4:00 PM, or a <u>wire transfer time-stamped as received by our bank on the redemption date</u>. Failure to follow these instructions may result in delay or denial of acceptance of your redemption funds and/or the execution of the certificate of redemption. Certificates of redemption are generally ready to be picked up or mailed within two business days after proper redemption funds are received.

## SELLER'S STATEMENT

**Borrower:** Paladium Holdings, LLC
**Seller:** New Buffalo Auto Sales, LLC
**Settlement Agent:** First Alliance Title, LLC
651-357-0000
**Place of Settlement:** 2573 Hamline Avenue N, Suite A
Roseville, MN 55113
**Settlement Date:** July 22, 2010
**Property Location:** 1615 Northridge Dr
Medina, MN
Hennepin County, Minnesota

| CREDITS | | |
|---|---|---|
| Purchase Price | | 618,075.30 |
| Less Total Credits to Seller | **TOTAL CREDITS** | 618,075.30 |

| DEBITS | | |
|---|---|---|
| Mortgage | | |
| Payoff First Mortgage | Hennepin County Sheriff | 320,000.00 |
| | | 218,075.30 |
| Less Total Reductions to Amount Due Seller | **TOTAL DEBITS** | 538,075.30 |

| BALANCE | | |
|---|---|---|
| To Seller | | 80,000.00 |

APPROVED:

New Buffalo Auto Sales, LLC

BY: _Thomas M. Zappia_

_First Alliance Title, LLC_

(5211 . 1615 NORTHRIDGE RD/5211 . 1615 NORTHRIDGE)

## BORROWER'S STATEMENT

**Borrower:** Paladium Holdings, LLC
**Seller:** New Buffalo Auto Sales, LLC
**Settlement Agent:** First Alliance Title, LLC
651-357-0000
**Place of Settlement:** 2573 Hamline Avenue N, Suite A
Roseville, MN 55113
**Settlement Date:** July 22, 2010
**Property Location:** 1615 Northridge Dr
Medina, MN
Hennepin County, Minnesota

| DEBITS | | |
|---|---|---|
| Purchase Price | First Alliance Title | 618,075.30 |
| Escrow for proceedings subsequ | First Alliance Title | 4,500.00 |
| Settlement or Closing Fee | First Alliance Title, LLC | 360.00 |
| Abstract or Title Search | First Alliance Title, LLC | 250.00 |
| Title Examination | First Alliance Title, LLC | 160.00 |
| Title Insurance | Stewart Title | 1,705.25 |
| Recording sevrice fees | First Alliance Title, LLC | 50.00 |
| Name search | First Alliance Title, LLC | 30.00 |
| Wire/Bank fees | First Alliance Title, LLC | 50.00 |
| Recording Fees | Recorder's Office | 184.00 |
| City/County Tax/Stamps | Recorder's Office | |
| State Tax/Stamps | Recorder's Office | 768.00 |
| Conservation Fees | Recorder's Office | 2,101.46 |
| State Deed tax | Recorder's Office | 15.00 |
| Foreclosure redemption service | First Alliance Title, LLC | 741.54 |
| | | 176.00 |
| Gross Amount Due From Borrower | **TOTAL DEBITS** | 629,145.55 |

| CREDITS | | |
|---|---|---|
| Deposit or Earnest money | | |
| Mortgage | | 320,000.00 |
| Less Total Credits to Borrower | **TOTAL CREDITS** | 320,000.00 |

| BALANCE | | |
|---|---|---|
| From Borrower | | 309,145.55 |

APPROVED:
Paladium Holdings, LLC

BY: _____

_____
First Alliance Title, LLC

## ALTA Commitment Form

### COMMITMENT FOR TITLE INSURANCE
### Issued by



Stewart Title Guaranty Company, a Texas Corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate six months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

This commitment shall not be valid or binding until countersigned by a validating officer or authorized signatory.

IN WITNESS WHEREOF, Stewart Title Guaranty Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers on the date shown in Schedule A.

Countersigned:

_____
Authorized Countersignature

First Alliance Title, LLC
Company Name

Roseville, MN
City, State

_____
Senior Chairman of the Board

_____
Chairman of the Board

_____
President

Stewart Title Guaranty Company

Commitment Number: 5211 - 1615 NORTHRID

## SCHEDULE A

1.  Effective Date:   July 14, 2010

2.  Policy or Policies to be issued:                                                                          Amount

    (a)   ___X___  Owner's Policy       ( ALTA Own. Policy (06/17/06) )          $ 618,075.30
          Proposed Insured:
          Paladium Holdings, LLC

    (b)   ___X___  Loan Policy          ( ALTA Loan Policy (06/17/06) )          $ 320,000.00
          Proposed Insured:
          New Buffalo Auto Sales, LLC, its successors and/or assigns
          as their respective interests may appear.

3.  The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4.  Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:
    Dennis E. Hecker, subject to the rights of US Bank, National Association, and junior creditors which have
    filed a Notice of Intent to redeem from mortgage foreclosure.

5.  The land referred to in the Commitment is described as follows:

    Lot 15, Block 1, North Ridge Farm, Hennepin County, Minnesota

    Torrens Property: Certificate of Title No.: 804148

    Property Address: 1615 North Ridge Dr., Medina, MN

**First Alliance Title, LLC**

By: _____

~~Its Authorized Officer~~

Copyright 2006-2009 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.



**American Land Title Association**

Stewart Title Guaranty Company

Commitment Number:  5211 - 1615 NORTHRID

### SCHEDULE B

1.   Requirements:

    1.    Payment to or for the account of the Seller or Mortgagors of the full consideration for the estate or interest to be acquired.

    2.    A Proceedings Subsequent is required to obtain a new certificate of title in the name of the foreclosing lender as shown in number 6 below, or their assigns. If such proceedings subsequent is not completed prior to closing, an escrow will be established to cover all potential costs incured, and a letter of undertaking from an attorney agreeing to pursue such proceedings subsequent is required.

        A.    NOTE: Upon completion of such Proceedings Subsequent, items number 6, 7, 8, 9, 10, 11, 12, 13, and 14 below will be removed from the Certificate of Title and/or no longer have any claim to the property in question..

    3.    Redemption from the mortgage foreclosure shown at number 6 below is required by New Buffalo Auto Sales, LLC, as judgment creditor as shown by document number 4747121.

    4.    Warranty deed, conveying marketable title, executed by New Buffalo Auto Sales, LLC, in favor of Paladium Holdings, LLC.

    5.    Mortgage executed by Paladium Holdings, LLC, in favor of New Buffalo Auto Sales, LLC.

    6.    Release or satisfaction of that Mortgage filed 11/10/1999, as Document Number 3223971, in favor of Firstar Bank USA, NA, in the original principal amount of $250,000.00. Said mortgage has been assigned to US Bank, National Association by Document Number 4161898, amended by Document Number 4161899, and foreclosed by Document Number 4721940 on January 19, 2010, subject to a six (6) month perior of redemption in favor of the fee owner, and subsequent redemption periods for junior creditors, if any.

    7.    Release or satisfaction of Mortgage in favor of Mortgage Electronic Registration Systems, Inc., filed December 17, 2001 as Document Number 3473643, in the original principal amount of $650,000.00.

    8.    Release or satisfaction of Mortgage in favor of GMAC Mortgage Corporation, filed December 17, 2001 as Document Number 3473643, in the original principal amount of $250,000.00

    9.    Judgment dated 04/20/2010, docketed 04/20/2010, in Court File Number 4747121, in favor of New Buffalo Auto Sales, LLC, against Dennis Hecker, in the original principal amount of $324,938.72.

        A.    Notice of Intention to redeem has been filed by New Buffalo Auto Sales, Inc as Document Number 4765099.

    10.    Federal Tax Lien against Dennis E. Hecker, dated April 8, 2009, filed April 22, 2009 as Document Number 9347403, in the original principal amount of $2,612,791.87, IRS Serial Number 533654109.

Copyright 2006-2009 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment Number: 5211 - 1615 NORTHRID

### SCHEDULE B
(Continued)

11. Judgment dated 01/27/2009, docketed 04/29/2009, as Document Number 4747638, in Court File Number 27-CV-08-25766, in favor of Koch Group Mpls, LLC, against Dennis Hecker, in the original principal amount of $813.67. Said judgment has been assigned to Palladium Holdings, LLC by Document Number 4768580.

12. Judgment docketed 04/28/2009, in Court File Number 27-CV-09-2152, in favor of Chrysler Financial Services Americas LLC, against Dennis Hecker, in the original principal amount of $476,925,874.60

13. Judgment docketed 06/05/2009, in Court File Number 27-CV-09-3719, in favor of JPMorgan Chase Bank, NA, against Dennis Hecker, in the original principal amount of $3,044,046.00

14. Judgment docketed 07/07/2009, in Court File Number 27-CV-09-8670, in favor of Bankfirst, against Dennis Hecker, in the original principal amount of $4,171,448.17

15. All parties will be required to execute any documents at closing as determined necessary by the Company, and will be required to provide government issued identification.

2. Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1. a) Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the Effective Date but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

   b) Rights or claims of parties in possession, not shown in the public records.

   c) Easements, or claims of easements, not shown in the public records.

   d) Discrepancies, conflicts in boundary lines, shortage in area, encroachments, and any facts which a correct survey and inspection of the premises would disclose and which are not shown in the public records.

   e) Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by laws and not shown in the public records.

2. Easements for utility and drainage purposes, as shown on the recorded plat.

3. Covenants, conditions and restrictions (deleting therefrom any restrictions indicating any preference, limitation or discrimination based upon race, color, religion, sex, handicap, familial status or national origin) recorded as Document Number 5004854, and amended by Document Number 4383786. Contains no forfeiture provision.

**Copyright 2006-2009 American Land Title Association. All rights reserved.**

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment Number: 5211 - 1615 NORTHRID

## SCHEDULE B
### (Continued)

4.     Restrictions indicate that the property is subject to an Association named , and may be subject to dues and/or assessments. The policies to be issued eill be subject to the rights of any association and/or amounts due to any association, whch claims an interest in the property in question.

5.     Real estate taxes for the year 2010, in the amount of 20,642.84 are 1/2 paid. The base tax is $20,642.84. The Tax ID Number is 24-118-23-43-0010, and the property is Non-Homestead.

6.     Special Assessments, if any.

7.     The commitment does not provide any coverage for matters, including, but not limited to unpaid utility bills, that are not shown in the public records as of the date of closing.

8.     Note: The property in question is Torrens property. The Certificate of Title Number is 804148.

9.     It appears that the address of the property in question is: 1615 Northridge DR., Medina, MN,

10.    If there are questions concerning this commitment, please contact Tim Netzell, at 651-357-0000 or tim@firstalliancetitle.com.

Copyright 2006-2009 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

## CONDITIONS

1. The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2. If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5. *The policy to be issued contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. You may review a copy of the arbitration rules at< http://www.alta.org/>.*



All notices required to be given the Company and any statement in writing required to be furnished the Company shall be addressed to it at P.O. Box 2029, Houston, Texas 77252.

In re:

Dennis E. Hecker,

        Debtor.

BKY No. 09-50779

---

Randall L. Seaver, Trustee,

        Plaintiff,

vs.

New Buffalo Auto Sales, LLC,
a Minnesota limited liability company,
f/k/a New Buffalo Chrysler, LLC,
Maurice J. Wagener, and Palladium Holdings
LLC,

        Defendants.

ADV No. 10-5027

---

## UNSWORN CERTIFICATE OF SERVICE

---

I hereby certify that on December 22, 2010, I caused the following documents:

> ***Notice of Hearing and Motion for Summary Judgment, Memorandum in Support
> of Motion for Summary Judgment, Affidavit of Matthew R. Burton and Proposed
> Findings of Fact, Conclusions of Law and Order for Judgment***

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be
delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice
pursuant to Local Rule 9006-1(a).

                               /e/  Stephanie Wood

Dated:  December 22, 2010
                               _____
                               Stephanie Wood
                               100 South Fifth Street, Suite 2500
                               Minneapolis, MN  55402
                               (612) 332-1030

432299

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                      BKY No. 09-50779

Dennis E. Hecker,

           Debtor.

_____

Randall L. Seaver, Trustee,
                                                             Adv. No.:  10-5027
           Plaintiff,

vs.

New Buffalo Auto Sales, LLC,
a Minnesota limited liability company,
f/k/a New Buffalo Chrysler, LLC,
Maurice J. Wagener and Palladium Holdings
LLC,

           Defendants.

_____

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

This case is before the court on the motion of Randall L. Seaver, trustee, for summary judgment.

Upon the motion and the files,

## <u>FINDINGS OF FACT</u>

1. This court has jurisdiction over this motion under 28 U.S.C. §§157 and 1334 and Federal Rule of Bankruptcy Procedure 5005.

2. Prior to May 7, 2009, Wagener possessed a claim against the debtor in the approximate amount of $324,938.72.

3.      In January of 2009, New Buffalo Auto Sales, LLC, f/k/a New Buffalo Chrysler, LLC, Maurice J. Wagener commenced an action in Hennepin County, MN against the debtor to assert their claim (Hennepin County court file no. 27-CV-09-2692).

4.      On or about May 7, 2009, a judgment in the amount of $324,938.72 was entered and docketed against the debtor and in favor of Wagener.

5.      On June 4, 2009, the debtor commenced this bankruptcy case.

6.      As of the commencement of this case, debtor owned real estate located 1615 Northridge Drive, Medina, MN 55391 and legally described as follows:

        Lot 15, Block 3, Northridge Farm, Hennepin County, Minnesota

6.      The Wagener judgment was obtained within 90 days prior to the commencement of this bankruptcy case.

7.      After the commencement of this case, on April 20, 2010, Wagener registered the judgment on the certificate of title for Northridge (torrens property).

8.      U.S. Bank held the first mortgage on Northridge and obtained stay relief, foreclosed its mortgage and purchased Northridge at a sheriff's sale for $213,263.00 on or about January 19, 2010.

9.      At all times material hereto, through the sheriff's sale, the certificate of title for Northridge evidenced that the debtor was the owner of Northridge.

10.      The second and third mortgage holders, whose original principal balances totaled approximately $900,000.00, did not redeem and, therefore, were eliminated as liens.

11.      Upon information and belief, Northridge has a value of in excess of $900,000.00. There has been an offer to purchase Northridge for $813,263.00. The Hennepin County tax value

for Northridge is currently $1,617,000.00.

12.     On or about July 22, 2010, Wagener, through use of the Wagener judgment, redeemed from the U.S. Bank foreclosure by tendering less than $225,000.00 to the Hennepin County Sheriff.

13.     That same day, Wagener sold his interest in Northridge to defendant Palladium, which had financed Wagener's U.S. Bank redemption. The Palladium/Wagener deal provided that Wagener would receive $80,000.00 and a $320,000.00 mortgage on Northridge from defendant Palladium Holdings LLC.

14.     The Wagener prepetition transfer occurred within 90 days of the bankruptcy petition.

15.     The Wagener prepetition transfer occurred when the debtor was insolvent.  Further, for purposes of 11 U.S.C §547, the debtor was deemed to have been insolvent pursuant to 11 U.S.C. §547(f).

16.     Receipt of the Wagener prepetition transfer allowed Wegener to receive more than he would have otherwise received in this chapter 7 case.

17.     The Wagener prepetition transfer was made on account of an antecedent debt.

18.     The Wagener prepetition transfer was made for the benefit of Wegener, a creditor of the Debtor.

19.     But for the registration of the judgment on the certificate of title for Northridge, Wagener could not have redeemed the U.S. Bank mortgage position.

20.     On or about April 29, 2009, Koch Group Mpls LLC obtained a judgment in the amount of $813.67 against the debtor in the Hennepin County District Court (court file no. 27-CV-08-25766).

21.     The Koch judgment was docketed within 90 days of the commencement of this bankruptcy case.

22.     On or about April 22, 2010, two days after the recording of the Wagener judgment, the Koch judgment was recorded against Northridge

23.     On or about June 11, 2010, the Koch judgment was assigned to defendant Palladium and said assignment was recorded against Northridge on July 8, 2010.

24.     On or about July 20, 2010, the debtor satisfied the Koch judgment by paying the amount due to the Hennepin County District Court.

25.     On July 26, 2010, the trustee recorded a lis pendens against Northridge.

26.     Despite having purchased the position of defendant Wagener, defendant Palladium recorded a notice of intention to redeem on July 8, 2010.

27.     The Koch prepetition transfer occurred when the debtor was insolvent. Further, for purposes of 11 U.S.C. §547, the debtor was deemed to have been insolvent pursuant to 11 U.S.C. §547(f).

28.     The Koch prepetition transfer allowed defendant Palladium to receive more than it would have otherwise received in this chapter 7 case.

29.     The Koch prepetition transfer was made on account of an antecedent debt.

30.     The Koch prepetition transfer was made for the benefit of defendant Palladium, a creditor of the debtor.

31.     Palladium had knowledge of debtor's bankruptcy filing.

32.     In February, 2010, the trustee signed and had delivered to attorney William Skolnick a deed purporting to transfer the estate's interest in the Northridge property to Ralph Thomas.

33.     The trustee's deed to Ralph Thomas was never registered.  The certificate of title, as it existed on July 30, 2010, still listed Dennis E. Hecker as the owner.

34.     On April 20, 2010, the judgment was memorialized upon the certificate as document no. 4747121.  The memorialization acted as conveyance of an interest in the Northridge property.

35.     Because the trustee's deed to Ralph Thomas was not registered, there was no conveyance of the Northridge property to Ralph Thomas from the trustee.  Because the trustee's deed was not registered, the defendants were able to memorialize the judgment on April 20, 2010.  Had the trustee's deed been registered prior to that time, and the conveyance had thus been made to Ralph Thomas, the defendants would have been unable to memorialize the judgment on the certificate.

36.     On July 23, 2010, prior to redemption recording by any defendant, a notice of bankruptcy case was filed by the trustee and memorialized on the certificate of title.

37.     On July 26, 2010, prior to redemption recording by any defendant, this adversary proceeding was commenced, and a notice of lis pendens was memorialized on the certificate of title.

38.     After the commencement of this case, Ralph Thomas returned the trustee's deed to the trustee and executed a quitclaim deed in favor of the trustee.

## CONCLUSIONS OF LAW

1.     There are no genuine issues of material fact and this matter may be resolved as a matter of law.

2.     Pursuant to 11 U.S.C. §550(a), defendant Palladium is an immediate or mediate transferee of the Koch judgment and the rights appurtenant thereto.

3.     Pursuant to Minn. Stat. §508.47(1), the trustee's deed did not act as a conveyance, but only a contract between the parties.  The act of registration was the operative act necessary to

convey Northridge. No such registration ever took place, and at all relevant times, the certificate of title remained in the name of Dennis E. Hecker.

4.      The trustee has established that he is entitled to avoid all transfers to defendants herein pursuant to 11 U.S.C. §§547, 549, 550 and 551.

5.      No defendant herein has the defense of "good faith" due to their knowledge of the bankruptcy case.

## ORDER FOR JUDGMENT

**IT IS ORDERED** that the clerk shall enter an order and judgment in favor of the plaintiff and against the defendants as follows:

1.      The interest of each defendant herein, including but not limited to, the interest of Palladium in Northridge and the mortgage held by Wagener, are avoided and preserved for the benefit of the bankruptcy estate.

2.      The trustee is awarded his costs and disbursements in this action.


Dated: _____

                                                            _____

                                                            United States Bankruptcy Court Judge


431966